## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PHYLLIS KING, on behalf of herself and others similarly situated, | Civil Action No. 1:25-cv-00105-RGA |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| BON CHARGE, an Australian company | |
| Defendant. | |

## DEFENDANT'S BRIEF IN SUPPORT OF MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(2) AND 12(b)(6)

# TABLE OF CONTENTS

I.      INTRODUCTION ......................................................................................................1

II.     FACTUAL BACKGROUND....................................................................................3

        A.      The Parties and Their Connection to the Forum. .......................................3

        B.      Plaintiff Initiates Engagement with Bon Charge. ......................................5

        C.      Plaintiff's Interactions with Bon Charge. ..................................................5

III.    LEGAL STANDARD................................................................................................6

        A.      Dismissal for Lack of Personal Jurisdiction Under F.R.C.P. 12(b)(2). ................6

        B.      Dismissal for Failure to State a Claim Under 12(b)(6)...........................6

IV.     ARGUMENT .............................................................................................................7

        A.      This Court Lacks Personal Jurisdiction Over Bon Charge and Plaintiff's
                Claims Against Bon Charge Must Be Dismissed Under F.R.C.P. 12(b)(2). ...........7

                1.      This Court Lacks General Jurisdiction Over Bon Charge. ........................8

                2.      This Court Lacks Specific Jurisdiction over Bon Charge...........................9

                        a.      Bon Charge Has Not "Purposefully Directed" its Activities
                                at Delaware Nor Do the Alleged Claims Arise Out of Any
                                Conduct by Bon Charge in Delaware. ...........................................9

                3.      Asserting Personal Jurisdiction Over Bon Charge Would Not
                        Comport With Traditional Notions of Fair Play and Substantial
                        Justice.......................................................................................................12

                4.      Personal Jurisdiction Under Federal Rule of Civil Procedure
                        4(k)(2) Would Violate Due Process.........................................................13

        B.      Plaintiff's Claims Against Bon Charge Also Fail to State a Claim for
                Relief Under F.R.C.P 12(b)(6) and Must be Dismissed. ......................................16

V.      CONCLUSION.........................................................................................................20

# TABLE OF AUTHROTIES

**Page(s)**

**Cases**

*Abedi v. New Age Med. Clinic, PA,*
    2018 U.S. Dist. LEXIS 105932 (E.D. Cal. June 25, 2018)....................................................10

*Ashcroft v. Iqbal,*
    556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ........................................6

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ........................................6

*Bell Helicopter Textron, Inc. v. C & C Helicopter Sales, Inc.,*
    295 F. Supp. 2d 400 (D. Del. 2002)........................................................................7

*Blow v. Bijora, Inc.,*
    855 F.3d 793 (7th Cir. 2017) ................................................................................18

*BP Chems. Ltd. v. Formosa Chem. & Fibre Corp.,*
    229 F.3d 254 (3d Cir. 2000)..................................................................................9

*Burger King Corp. v. Rudzewicz,*
    471 U.S. 462, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)....................12, 13, 14, 16

*Campbell-Ewald Co. v. Gomez,*
    577 U.S. 153 (2016)............................................................................................10

*Carteret Sav. Bank, FA v. Shushan,*
    954 F.2d 141 (3d Cir. 1992)..................................................................................6

*Daimler AG v. Bauman,*
    571 U.S. 117 (2014)..............................................................................................8

*Fischer v. Hilton,*
    549 F. Supp. 389 (D. Del. 1982)..........................................................................10

*Goodyear Dunlop Tires Operations, S.A v. Brown,*
    564 U.S. 915, 131 S. Ct. 2846, 180 L. Ed. 2d 796 (2011) ........................................8

*IMO Indus., Inc. v. Kiekert AG,*
    155 F.3d 254 (3d Cir. 1998)..................................................................................7

*Int'l Shoe Co. v. Washington,*
    326 U.S. 310 (1945)........................................................................................7, 12

*Komaiko v. Baker Techs., Inc.*,
No. 19-cv-03795-DMR, 2020 U.S. Dist. LEXIS 70162
(N.D. Cal. Apr. 20, 2020) ..............................................................................10, 11

*Mayer v. Belichick*,
605 F.3d 223 (3d Cir. 2010) ....................................................................................6

*Miller Yacht Sales, Inc., v. Smith*,
384 F.3d 93 (3d Cir. 2004) ......................................................................................6

*Pats Aircraft, LLC v. Munich*,
197 F. Supp. 3d 663 (D. Del. 2016) ......................................................................10

*Patterson by Patterson v. F.B.I.*,
893 F.2d 595 (3d Cir. 1990) ....................................................................................6

*Provident Nat'l Bank v. California Federal Sav. & Loan Assoc.*,
819 F.2d 434 (3d Cir. 1987) ....................................................................................6

*Reese v. Marketron Broad Sols., Inc.*,
2018 U.S. Dist. LEXIS 77319 (E.D. La. May 8, 2018) ........................................18

*Rocke v. Pebble Beach Co.*,
541 Fed. App'x 208 (3d Cir. 2013) .........................................................................8

*Sathianathan v. Pac. Exch., Inc.*,
248 Fed. Appx. 345 (3d Cir. 2007) .......................................................................10

*Thorn EMI N. Am. Inc. v. Micron Tech., Inc.*,
821 F. Supp. 272 (D. Del. 1993) ...........................................................................10

*Time Share Vacation Club v. Atlantic Resorts, Ltd.*,
735 F.2d 61 (3d Cir. 1984) ......................................................................................6

*Van Patten v. Vertical Fitness Grp., LLC*,
847 F.3d 1037 (9th Cir. 2017) ..............................................................................18

*Winner v. Kohl's Dep't Stores, Inc.*,
No. 16-1541, 2017 U.S. Dist. LEXIS 131225 (E.D. Pa. Aug. 17, 2017) ........17, 18

*World-Wide Volkswagen Corp. v. Woodson*,
444 U.S. 286 (1980) ..............................................................................................12

**Statutes**

10 *Del. C.* § 3104(c)(1)-(2) ...................................................................................9

10 *Del. C.* § 3104(c)(1)-(4) ...................................................................................7

Telephone Consumer Protection Act 47 U.S.C. § 227(c)(5) ................................. *passim*

**Other Authorities**

F.R.C.P. 12(b)(2) ..........................................................................6, 7, 11, 13

Federal Rule of Civil Procedure 4(k)(2) ............................................................13, 14

Federal Rules of Civil Procedure 12(b)(2)........................................................1, 11

Federal Rules of Civil Procedure Rule 12(b)(6) ....................................1, 2, 6, 11, 16, 17

# I.     INTRODUCTION

Defendant Bon Charge f/k/a Blublox Pty Ltd. ("Defendant" or "Bon Charge") is an Australian company with *no* offices in the State of Delaware (or any state within the United States), *no* registered agent for service of process, *no* principal place of business on this continent, and *no* direct marketing or solicitation conduct directed to the State of Delaware. Defendant has no expectation of being haled into court in Delaware because it has no connection to Delaware, nor has the Plaintiff alleged any connection between Bon Charge and Delaware.

Plaintiff Phyllis King ("Plaintiff" or "Ms. King"), on behalf of herself and others similarly situated, filed the putative class action Complaint against Bon Charge on January 24, 2025 (D.I. 1), alleging Bon Charge violated the Telephone Consumer Protection Act ("TCPA") 47 U.S.C. § 227(c)(5). The only connection to Delaware alleged is Plaintiff's residence (D.I. 1 at ¶ 3). That allegation alone is insufficient to support even a plausible inference on which personal jurisdiction could possibly exist against the Australian Defendant.

The claims against Bon Charge must be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).

First, this Court lacks both general and specific personal jurisdiction over Bon Charge. With respect to general jurisdiction, Bon Charge is a small, husband-and-wife owned Australian company with its principal place of business in Perth, Australia, and is not "at home" in Delaware. Declaration of Andy Mant in Support of Motion to Dismiss ("Mant Decl.") ¶ 5. With respect to specific jurisdiction, the requirements of "purposeful availment" or "purposeful direction" of activities toward a forum state have not and cannot be met. Thus, specific jurisdiction over Bon Charge cannot be established.

Ms. King, despite alleging she is a Delaware resident, maintains a Pennsylvania phone number, and alleges that Bon Charge, an Australian company, violated the TCPA when it sent

her SMS text messages from the company to her Pennsylvania phone number. D.I. 1 ¶¶ 3, 4, 15, 19, 21. None of the SMS text messages forming the basis of Plaintiff's Complaint involve a Delaware phone number, or otherwise involve the State of Delaware. The mere fact that Ms. King alleges she is a resident of Delaware when she received the alleged SMS text messages, is insufficient to establish personal jurisdiction over Bon Charge. The Supreme Court explained in *Walden v. Fiore* that "our 'minimum contacts' analysis looks to the defendant's contacts **with the forum State itself, <u>not</u> the defendant's contacts with persons who reside there**." 571 U.S. 277, 285 (2014) (emphasis added). The relationship must envision "continuing and wide-reaching contacts in the forum state." *Id.* Here, Bon Charge's relationship to this case is with the Plaintiff's Pennsylvania phone number, rather than with the state of Delaware itself. Simply put, at no time did the Bon Charge purposefully avail itself of the privilege of conducting business in the State of Delaware when it communicated with Plaintiff on her Pennsylvania phone number. And certainly, this same engagement did not create a substantial connection to Delaware.

Second, Ms. King fails to state a claim under Rule 12(b)(6). Based on the communications log Bon Charge obtained from its SMS messaging provider, Ms. King's Pennsylvania phone number *initiated* the first SMS text message *to* Bon Charge by texting a "keyword" to obtain a discount code. Only after Ms. King's Pennsylvania phone number texted Bon Charge did Bon Charge send SMS messages and information regarding its products and promotions to Ms. King's mobile number. *See* Mant Decl. at Ex. A.

Ms. King's allegations that a Perth, Australia based company violated the TCPA fall flat when Bon Charge does not engage in spam-like texting, only sends messages to mobile numbers who opt-in or subscribe and Ms. King did nothing to stop or opt out of receiving messages for three and half year period. The TCPA was not meant to allow a Plaintiff to seek damages for

SMS text messages she directly initiated and allowed to accumulate for nearly four years, then effectively ended by texting "STOP" as directed in the very first text received from Bon Charge.

## II.      FACTUAL BACKGROUND

### A.      The Parties and Their Connection to the Forum.

Bon Charge is an Australian company, headquartered in Perth, and co-founded by husband-and-wife Andy Mant and Katie Mant. Mant Decl. ¶ 3. Originally named "BluBlox," the company rebranded with the name Bon Charge in June 2022, and has operated under that name since. Mant Decl. ¶ 3. Bon Charge sells a host of wellness products and services, with a mission to make premium, science-backed products that help users enhance every aspect of their well-being. Mant Decl. ¶¶ 3, 6. While the U.S. is, of course, a desirable market, Bon Charge has no physical presence in any state within the U.S. Mant Decl. ¶ 7. Bon Charge does not maintain a registered agent for service or process, does not have a U.S. bank account, nor does it maintain any manufacturing footprint in the U.S. Mant Decl. ¶ 7. Bon Charge is solely an e-commerce business as it relates to U.S. customers and subscribers. Mant Decl. ¶ 8.

As a small company, Bon Charge never buys phone numbers, nor does it directly solicit consumers. Mant Decl. ¶ 12. Bon Charge does not engage in a practice of sending spam-like texts to random phone number and have never purposefully directed any marketing or texts to the State of Delaware. Mant Decl. ¶ 12. Nor has Bon Charge had any special promotions for Delaware customers or subscribers. Mant Decl. ¶ 8. Instead, prospective consumers can request additional information, including promotional codes and company communications, by opting-in through the Bon Charge website platform, by texting codes from their mobile devices, by entering a code and mobile phone number on the Bon Charge website, or by agreeing to check-out terms and conditions that include company communications. Mant Decl. ¶ 13. Bon Charge does not use an automated dialing system ("ADS") to spam text or call any person in any

country. Mant Decl. ¶ 14. Rather, Bon Charge offers all potential customers the option to "subscribe" to receive emails or SMS text messages offering discounts, promotional offers, and information on new products and services offered by the company. Mant Decl. ¶ 13. These marketing activities are not direct towards or otherwise unique to the State of Delaware. Mant Decl. ¶ 8.

From 2021 until July 2024, Bon Charge used PostScript iO for automating and sending SMS text messages to individuals who opted into receiving company communications. Mant Decl. ¶ 15. Bon Charge sent a text message to all subscribers in June 2022, advising customers that it had rebranded and changed its name from BluBlox to Bon Charge. Mant Decl. ¶ 20; *see also* Mant Decl. at Ex. A, Lines 75. Several messages in a row contained both names so that subscribers could identify the name change and rebrand. Mant Decl. at Ex. A, Lines 75-94. In July 2024, Bon Charge changed its provider for SMS text messaging from PostScript iO to Klaviyo for SMS text messaging in the United States. Mant Decl. ¶ 15.

Ms. King alleges that she is a resident of Delaware, however, she maintains a Pennsylvania based mobile telephone number. D.I. 1 ¶¶ 3, 19. She alleges that she registered her Pennsylvania telephone number on the national "Do-Not-Call" registry some time in 2022. D.I. 1 ¶ 20. Ms. King alleges that Bon Charge violated the TCPA when it sent her SMS text messages in 2024. D.I. 1 ¶ 21. Ms. King alleges that she, and others similarly situated, have been harmed by these texts tying up her telephone line, using her time, and preventing her from receiving legitimate communications. D.I. 1 ¶ 24. Ms. King's Complaint does not take issue with the SMS text message she received when she opted-in to receive messages from Bon Charge in February 2021, nor does she take issue with the messages she received from 2021 up to and including July 2024.

**B.**       **Plaintiff Initiates Engagement with Bon Charge.**

On or about February 22, 2021, Ms. King, through her Pennsylvania phone number, sent an opt-in text message to Bon Charge via a "keyword" which is a common method for opting into promotional messages from e-commerce businesses and online retailers. Mant Decl. ¶ 17. Based on the content of the message sent from Ms. King's number, she texted more than the keyword "BLUBLOXSAVE15"; it appears she texted the entirety of the explanation for texting a keyword to obtain a promotional discount. *See* Mant Decl. at Ex. A, Line 1. Shortly thereafter, Ms. King received a subscriber confirmation communication from Bon Charge thanking her for subscribing, advising that message and data rates may apply, messages are recurring, and advising her she could opt-out of receiving SMS text messages by texting "STOP". *See* Mant Decl. at Ex. A, Line 2. Over the following three and a half years, until she texted "STOP" in October 2024, Ms. King received SMS messages from Bon Charge and never once complained or replied with "STOP" to end the allegedly unwanted messages. All of the text messages, including the three referenced in Ms. King's Complaint, were sent by Bon Charge to the Pennsylvania phone number that had opted into receiving messages.

**C.**       **Plaintiff's Interactions with Bon Charge.**

At all times, the interactions between Ms. King and Bon Charge were limited to the SMS text messages. *See generally,* D.I. 1. Ms. King did not make any purchases from Bon Charge, nor did Bon Charge send products to Ms. King's Delaware address stated in the Complaint. Mant Decl. at ¶ 21. Ms. King does not even substantiate whether the SMS messages she received from Bon Charge were all received by her Pennsylvania phone number while she was physically in the state of Delaware. *See* D.I. 1. Simply put, Bon Charge has no connection to Delaware, apart from Ms. King allegedly residing in the state.

### III.  LEGAL STANDARD

**A.  Dismissal for Lack of Personal Jurisdiction Under F.R.C.P. 12(b)(2).**

Once defendant raises the question of personal jurisdiction, the plaintiff bears the burden to prove, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction. *Carteret Sav. Bank, FA v. Shushan,* 954 F.2d 141, 146 (3d Cir. 1992); *see also Miller Yacht Sales, Inc., v. Smith,* 384 F.3d 93, 97 (3d Cir. 2004). To meet this burden, plaintiff must establish with reasonable particularity sufficient contacts between the defendant and forum state. *Provident Nat'l Bank v. California Federal Sav. & Loan Assoc.*, 819 F.2d 434 (3d Cir. 1987). Because Rule 12(b)(2) necessarily involves resolution of factual issues outside of the pleadings, plaintiff may produce sworn affidavits or other competent evidence to support its burden. *See Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 67 n.9 (3d Cir. 1984). The plaintiff cannot rely on "mere allegations" to meet her burden of establishing personal jurisdiction over defendant. *Patterson by Patterson v. F.B.I.*, 893 F.2d 595, 604 (3d Cir. 1990).

**B.  Dismissal for Failure to State a Claim Under 12(b)(6).**

A defendant may move for dismissal of an action under F.R.C.P 12(b)(6) for plaintiff's failure to state a claim upon which relief can be granted. Dismissal of a complaint is appropriate if the complaint does not contain facts sufficient to state a claim that is facially plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677-78, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). The factual allegations must include more than just a formulaic recitation of the elements of the claims. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). On a motion to dismiss, the court is limited to a review of the allegations in the complaint and any exhibits attached thereto, as well as matters of public record incorporated by reference. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

# IV.   ARGUMENT

## A.   This Court Lacks Personal Jurisdiction Over Bon Charge and Plaintiff's Claims Against Bon Charge Must Be Dismissed Under F.R.C.P. 12(b)(2).

When determining whether personal jurisdiction exists over a defendant, the Court must conduct both a statutory and constitutional due process inquiry. *Bell Helicopter Textron, Inc. v. C & C Helicopter Sales, Inc.*, 295 F. Supp. 2d 400, 403 (D. Del. 2002). For the statutory inquiry, when a defendant is not a resident of the forum, the court must determine whether the defendant's actions make it subject to Delaware's long-arm statute. *See IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998).

Delaware's long-arm statute authorizes jurisdiction over a nonresident who in person or through an agent: (1) transacts any business or performs any character of work or service in the State; (2) contracts to supply services or things in this State; (3) causes tortious injury in the State by an act or omission in this State; (4) causes tortious injury in the State or outside the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State, or derives substantial revenue from services or things used or consumed in the State. 10 *Del. C.* § 3104(c)(1)-(4).

Turning to the constitutional due process inquiry, due process requires that a nonresident defendant have certain minimum contacts with the forum state so that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Here, this Court lacks both general and specific jurisdiction to exercise personal jurisdiction over Bon Charge, as set forth in more detail below. Indeed, any alleged minimum contacts Bon Charge might have with the State of Delaware would not meet the statutory or

constitutional requirements, or otherwise comport with traditional notions of fair play and substantial justice. As such, Ms. King's complaint against Bon Charge must be dismissed.

1. **This Court Lacks General Jurisdiction Over Bon Charge.**

"General jurisdiction, or all-purpose jurisdiction, permits a court to exercise jurisdiction over a defendant for any and all causes of action arising from any of the defendant's activities, even if those activities occurred outside the forum state." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014). But, "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Daimler*, 571 U.S. at 137. "With respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction'" because these places have the benefit of being unique and easily ascertainable, and a corporation may reasonably anticipate being haled into court in either place. *Id.* Subsection (c)(4) of Delaware's long-arm statute provides for general jurisdiction if the defendant's contacts are so "continuous and systematic as to render them essentially at home in the forum state." *Goodyear Dunlop Tires Operations, S.A v. Brown*, 564 U.S. 915, 919, 131 S. Ct. 2846, 180 L. Ed. 2d 796 (2011) (quoting *Int'l Shoe*, 326 U.S. at 317) (internal quotations omitted). If general jurisdiction does not exist, the court cannot exercise personal jurisdiction over defendant's unrelated activities in the forum state. *See Rocke v. Pebble Beach Co.*, 541 Fed. App'x 208, 210 (3d Cir. 2013).

Here, Plaintiff alleges that Bon Charge sent SMS text messages to her Pennsylvania phone number, and that she happens to reside in the state of Delaware. It is clear that this Court certainly does not have general jurisdiction based on those facts alleged in Ms. King's Complaint. To be clear, Bon Charge is a privately held, husband-and-wife owned company based in Perth, Australia. Mant Decl. ¶ 5. Bon Charge's principal place of business is in Perth, Australia, where the small Bon Charge team manages the company's day-to-day affairs. D.I. 1 ¶

4; Mant Decl. ¶ 9. Bon Charge is not authorized to conduct business in the state of Delaware, it is not incorporated in Delaware, it does not maintain any offices, warehouses, manufacturing plants, bank accounts, phone numbers, or other physical presence in the United States, let alone Delaware. Mant Decl. ¶ 7. In addition to lacking all of the aforementioned, Bon Charge does not have, nor does Ms. King allege that it has, any contacts so "continuous and systemic" as to render it at home in Delaware. Ms. King has not even pleaded she received these messages while in Delaware. Ms. King pleads only that she is a Delaware resident, with a Pennsylvania mobile phone number. In short, Ms. King has failed to plead a sufficient plausible basis to support the possibility of finding general personal jurisdiction over Bon Charge

> **2.    This Court Lacks Specific Jurisdiction over Bon Charge.**

Specific jurisdiction "exists when the defendant has 'purposefully directed' his activities at residents of the forum and the litigation results from alleged injuries that 'arise out of or related to' those activities." *BP Chems. Ltd. v. Formosa Chem. & Fibre Corp.*, 229 F.3d 254, 259 (3d Cir. 2000) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)). Under the Delaware long-arm statute, specific jurisdiction may exist where an entity "1) transacts any business or performs any character of work or service in the State; 2) contracts to supply services or things in this State." 10 *Del. C.* § 3104(c)(1)-(2).

Here, Ms. King's allegations that Bon Charge sent SMS text messages to her Pennsylvania phone number, without more, is insufficient to establish specific jurisdiction over Bon Charge.

> **a.    Bon Charge Has Not "Purposefully Directed" its Activities at Delaware Nor Do the Alleged Claims Arise Out of Any Conduct by Bon Charge in Delaware.**

Bon Charge has not "purposefully directed" its activities at the State of Delaware and the protections of Delaware laws; and therefore, specific jurisdiction does not exist under §

3104(c)(1)-(3). *Thorn EMI N. Am. Inc. v. Micron Tech., Inc.,* 821 F. Supp. 272, 274 (D. Del. 1993). Delaware case law is clear that telephone calls into the state alone, are generally insufficient to justify an exercise of personal jurisdiction over a foreign defendant consistent with due process. *See Sathianathan v. Pac. Exch., Inc.*, 248 Fed. Appx. 345, 347 (3d Cir. 2007).[1] Similarly, telephone calls into the state are insufficient to constitute the transaction of business in Delaware. *See Pats Aircraft, LLC v. Munich*, 197 F. Supp. 3d 663, 671 (D. Del. 2016); *see also Fischer v. Hilton*, 549 F. Supp. 389, 391 (D. Del. 1982) (finding that telephone calls without action by the Defendants within the state of Delaware does not constitute transacting business).

In TCPA cases specifically, foreign defendants (whether sister-state or non-U.S. entities) must do more than place a call or text to plaintiff who happens to reside in state before courts will find sufficient minimum contacts to satisfy due process. *See Komaiko v. Baker Techs., Inc.*, No. 19-cv-03795-DMR, 2020 U.S. Dist. LEXIS 70162 (N.D. Cal. Apr. 20, 2020); *Abedi v. New Age Med. Clinic, PA*, 2018 U.S. Dist. LEXIS 105932 (E.D. Cal. June 25, 2018). Courts have declined to exercise personal jurisdiction over a foreign defendant where the defendant has no reason to know their conduct would be felt in the forum state. *See Komaiko*, 2020 U.S. Dist. LEXIS 70162 at *21 (citing *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1145 (9th Cir. 2017) and holding in a TCPA case the "mere knowledge of the statistical probability that its activities will have some impact in [the forum state] is too attenuated to support the exercise of personal jurisdiction in this state.") *Komaiko v. Baker Techs., Inc.*, is persuasive, as the facts are nearly identical to those at issue in this case. In *Komaiko*, plaintiffs were the named representatives in a putative class action asserting claims for violations of the TCPA against Baker Technologies Inc.

---

[1] Ms. King and Bon Charge agree that SMS text messages are considered the equivalent of telephone calls under the TCPA. *See Campbell-Ewald Co. v. Gomez,* 577 U.S. 153, 156 (2016).

("Baker"). *Id.* at *2. Baker moved to dismiss for lack of personal jurisdiction and failure to state a claim under F.R.C.P. 12(b)(2) and 12(b)(6). *Id.* Baker was a Delaware corporation with its principal place of business in Colorado and the named plaintiffs were California residents with mobile phone numbers bearing Illinois and Kansas telephone area codes. *Id.* at 2, 7, 9. Plaintiffs visited marijuana dispensaries in Colorado and Washington, and began receiving SMS text messages to their Illinois and Kansas telephone numbers from those dispensaries. Both dispensaries are clients of Baker, which deploys marketing communications on behalf of the dispensaries, including text messaging. *Id.* at 8. In concluding the complaint must be dismissed for lack of personal jurisdiction under F.R.C.P. 12(b)(2), the court reasoned that a Delaware corporation with its principal place of business in Colorado had not purposefully directed or expressly aimed its actions at California. *Id.* at *22. Indeed, the plaintiffs could not meet their burden to show that Baker "expressly aimed conduct at California through the text messages sent to non-California numbers from non-California dispensaries." *Id.*

Much like the facts in *Komaiko*, Ms. King alleges that she received SMS text messages from the Australian Bon Charge, to her Pennsylvania telephone number. D.I. 1 ¶¶ 19, 20. Her sole allegation tying her claim to the state of Delaware is that she resides in Delaware. D.I. 1 ¶ 3. Indeed, Ms. King offers nothing to support that Bon Charge conducts business in Delaware or otherwise directs its activities at Delaware – she does not even allege that she received the SMS text messages to her Pennsylvania telephone number while she was in the state of Delaware. *See generally,* D.I. 1. Nor does Ms. King allege that Bon Charge had any reason to know her Pennsylvania number had any connection whatsoever to Delaware. Because Bon Charge did not "purposefully direct" activities at Delaware, Ms. King's claims cannot "arise out of" or be "related to" Bon Charge's activities in Delaware. And as confirmed by Bon Charges founder,

Bon Charge has not directed any actions toward Delaware nor undertaken any activities in Delaware. Clearly, the threadbare allegations of Ms. King's Complaint are woefully insufficient to establish Bon Charge "purposefully directed" its activities or otherwise transacted business in Delaware based on SMS text messages to a Pennsylvania number alone.

### 3. Asserting Personal Jurisdiction Over Bon Charge Would Not Comport With Traditional Notions of Fair Play and Substantial Justice.

While the statutory inquiry makes it clear that this Court does not have personal jurisdiction over Bon Charge, the constitutional inquiry further illuminates that any assertion of personal jurisdiction by this Court over Bon Charge will not comport with the notions of fair play and substantial justice.

To exercise personal jurisdiction over a foreign entity, the court must find sufficient minimum contacts between the defendant and forum state so that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). In *Walden v. Fiore*, the Supreme Court explained that "our 'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." 571 U.S. 277, 285 (2014). The relationship must envision "continuing and wide-reaching contacts in the forum state." *Id*. Critical to the due process analysis is that the defendant's contact with the forum state is such that he would reasonably anticipate being haled into court in that forum. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980). It is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235 (1958)). "Purposeful availment" requires that a defendant be haled into court in a forum

State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *See Id*.

Here, any exercise of personal jurisdiction over Bon Charge would offend the notions of fair play and substantial justice. The Court must look at Bon Charge's contracts with the state of Delaware itself, not its SMS text messages to a Plaintiff with a Pennsylvania phone number allegedly residing in Delaware. As a small, privately held company with its principal place of business in Perth, Australia, Bon Charge does not have "continuing and wide-reaching" contacts in Delaware, and certainly not to any extent that it would reasonably anticipate being haled into a Delaware court for purposes of defending itself in a lawsuit brought by a Plaintiff who opted into receiving SMS text messages to her Pennsylvania phone number. Due process certainly does not contemplate that Bon Charge, sending such SMS text messages, from Australia, to a Pennsylvania phone number, should expect that it purposefully availed itself of conducting activities in Delaware. Simply put, if the Court finds personal jurisdiction over Bon Charge based on these facts, the decision would be made based on random, fortuitous, and attenuated contacts with a plaintiff who alleges no other facts to tie this lawsuit to Delaware apart from her alleged residency in the state.

As such, the Court should dismiss Ms. King's lawsuit for lack of personal jurisdiction pursuant to F.R.C.P. 12(b)(2).

**4.      Personal Jurisdiction Under Federal Rule of Civil Procedure 4(k)(2) Would Violate Due Process.**

In anticipation that Ms. King may argue that this Court has personal jurisdiction over Bon Charge under F.R.C.P. 4(k)(2), Bon Charge address below why such an exercise would violate its right to due process.

Pursuant to F.R.C.P. 4(k)(2), for a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the constitution. Fed. R. Civ. P. 4(k)(2). In conducting a due process analysis under F.R.C.P. 4(k)(2), the court must assess the five *Burger King* factors: 1) the burden on the defendant; 2) the forum's interest in adjudicating the dispute; 3) the plaintiffs interest in obtaining convenient and effective relief; 4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and 5) the shared interest of the states in furthering substantive social policies. *See Burger King*, 471 U.S. at 477.

Here, the *Burger King* factors do not weigh in Ms. King's favor. As a threshold matter, Bon Charge concedes that the TCPA is a federal law, and therefore, Ms. King's claims arise under federal law. Bon Charge also acknowledges that, as a small, privately held Australian company without any presence in the United States, it may be difficult to identify where in the United States Bon Charge could be subject to any state's courts of general jurisdiction. But having a federal claim and difficulty in finding a proper court are not sufficient bases for saddling a small family-run Australian company with a putative U.S. class action literally half-way around the world. An exercise of personal jurisdiction by this Court would be inconsistent with due process under the Constitution, as illuminated by the *Burger King* factors.

First, it would be a tremendous burden on Bon Charge, as a small, privately held, husband-and wife-owned company, to fly back and forth from Perth, Australia to Delaware. Mant Decl. ¶ 23. Perth is generally considered the most isolated metropolis on earth, with the next closest city more than 2000 kilometers (approximately 1,300 miles) away. Mant Decl. ¶ 2. The journey for Andy and Katie Mant may easily take four or more flights (each way), including

at several long-haul flights, thousands of dollars in travel expenses, significant time away from hands-on, daily operations and management of Bon Charge, not to mention the physical toll such travel takes when moving through significant time-zone changes. Mant Decl. ¶¶ 23. This high-level analysis does not even contemplate the burden of depositions, meetings with internationally-based counsel, engaging with a foreign country's legal system, and court appearances for motions, oral arguments, conferences, or trial. Without a doubt, it would be a remarkable burden on Bon Charge to defend this lawsuit in Delaware.

Second, Delaware does not have a meaningful interest in adjudicating this dispute between Ms. King and Bon Charge. As thoroughly discussed in this brief, the only fact tying Delaware to this lawsuit is Ms. King's allegation that she resides in Delaware. Simply put, Delaware has no interest in adjudicating a TCPA case where the thrust of the claim is that a small Australian company sent SMS text messages to a plaintiff with a Pennsylvania phone number after she opted into receiving those SMS text messages in February of 2021. This is not a compelling basis for Delaware to adjudicate this dispute.

Third, the Plaintiff is not in need of convenient or effective relief from Delaware courts. After receiving a letter from Ms. King's attorneys threatening litigation, Andy Mant immediately and manually unsubscribed Ms. King from all Bon Charge communications. Mant Decl. ¶ 22. Ms. King has not received any messages from Bon Charge since, nor will she ever receive messages from Bon Charge again, as she has been permanently removed from Bon Charge's subscriber list. Mant Decl. ¶ 22. If Ms. King does, in fact, reside in Delaware, this Court is convenient for her, but that fact alone is insufficient to tip this factor in her favor.

Fourth, the interstate judicial system's interest in obtaining the most efficient resolution of controversies favors Bon Charge. Again, if Bon Charge is forced to defend this case in

Delaware, nothing about this lawsuit will be efficient. Scheduling with be a constant struggle with the significant time-zone difference between the parties and the Court, costs will likely be extraordinarily high for all parties, depositions will be difficult to arrange and coordinate, evidence could be on two continents, and at some point, in addition to Delaware and U.S. Federal law, Australian laws may become relevant. This factor favors Bon Charge.

Fifth and finally, is the factor of the shared interest of the states in furthering substantive social policies. While the spirit of the TCPA is designed to end harassing telemarketing calls, this case ignores that purpose. Here, Ms. King opted to receive SMS text messages, using her Pennsylvania phone number, from Bon Charge in February 2021. Mant Decl. at Ex. A. After sitting on those messages for more than three years, Ms. King takes issue with three SMS text messages, then threatens litigation. Now she demands monetary damages for these messages. D.I. 1 ¶¶ 41, 46. This set of facts certainly does not suggest this Court's involvement will advance the social policy of ending unwanted telemarketing calls that the TCPA was designed to prevent. This factor does not favor Ms. King either.

In analyzing the *Burger King* factors, it remains abundantly clear that any exercise of personal jurisdiction over Bon Charge would violate the due process afforded by the Constitution. The Court should dismiss this action for lack of personal jurisdiction pursuant to F.R.C.P 12(b)(6).

**B.**     **Plaintiff's Claims Against Bon Charge Also Fail to State a Claim for Relief Under F.R.C.P 12(b)(6) and Must be Dismissed.**

Ms. King's TCPA claims fail because she opted to receive SMS text messages from Bon Charge. In her Complaint, Ms. King alleges that, despite registering her Pennsylvania phone number on the national do-not-call registry, Bon Charge sent her promotional approximately three text messages in August and September of 2024. D.I. 1 ¶¶ 19-21. She alleges that she never

requested to receive communications from Bon Charge. D.I. 1 ¶ 17. However, it is clear that she 1) opted to receive messages from Bon Charge in 2021, more than a year before she allegedly registered on the national Do Not Call Registry; 2) received a response to her opt-in message that provided an opportunity to unsubscribe, and 3) sat on those SMS texts messages for years. Indeed, if Ms. King truly did not want these SMS text messages she would have and could have unsubscribed immediately. The TCPA was simply not designed to protect a Plaintiff like Ms. King.

Similar facts exist in *Winner v. Kohl's Dep't Stores, Inc.*, where the court dismissed the matter for failure to state a claim under Rule 12(b)(6). *Winner v. Kohl's Dep't Stores, Inc.*, No. 16-1541, 2017 U.S. Dist. LEXIS 131225 (E.D. Pa. Aug. 17, 2017). In *Winner*, the named plaintiff brought a class action TCPA claim against Kohl's Department Stores ("Kohl's") alleging Kohl's sent her unauthorized telemarketing SMS text messages. *Winner* 2017 U.S. Dist. LEXIS 131225 at *2. Ms. Winner saw a sign advertising Kohl's rewards program and inviting plaintiff to enroll via texting a keyword to a Kohl's number. *Id*. She then sent a text message with the keyword to the Kohl's number, which automatically enrolled her in "Yes2You Rewards." *Id. Ms*. Winner proceeded to interact with those SMS text messages, even redeeming a discount code included in the SMS text message. *Id*. at 7. The messages advised Ms. Winner that she could text "STOP" to unsubscribe from the SMS text messages. *Id.* Finally, after four years of receiving what Ms. Winner argued were unwanted SMS text messages, she texted "STOP." *Id.* at 8. She was immediately unsubscribed from the Kohl's "Yes2You Rewards" list, and received no additional SMS text messages. *Id.* In ultimately dismissing the matter, the Court considered the sequence of events, which began with Ms. Winner messaging Kohl's first. *Id* at *20. The SMS text messages also notified Ms. Winner that she could unsubscribe and the

procedure (texting "STOP") for doing so. While Ms. Winner argued that she never gave her express written consent to receive the messages, as required by the TCPA, the *Winner* court rejected that argument based on her actions and the sequence of Ms. Winner starting the text messages and, in essence, inviting more messages and interacting with the messages for an extended period of time. *Id*., *see also Reese v. Marketron Broad Sols., Inc*., 2018 U.S. Dist. LEXIS 77319, *14-15 (E.D. La. May 8, 2018).

In addition to *Winner*, two Federal Circuit Courts have held that "when a consumer provides her cell phone number to the caller," she consents to receive messages from the caller so long as the messages are "related to the reason the number was provided." *Blow v. Bijora, Inc.*, 855 F.3d 793, 804 (7th Cir. 2017) (holding plaintiff in TCPA class action provided prior express consent for the text messages received by giving her phone number to the retailer to receive discounts); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1046 (9th Cir. 2017) (holding the consumer gave prior express consent to receive text messages when he provided his mobile phone number in the first instance to apply for a gym membership and text messages were related to campaign to have inactive members return to the gym).

Just like the Plaintiffs in *Winner, Blow,* and *Van Patten,* Ms. King initiated the first interaction with Bon Charge and opted to receive Bon Charge text messages by using the keyword "BLUBLOXSAVE15" to receive discounts from Bon Charge. Mant Decl. at Ex. A, Line 2. Based on that record alone, it is clear that Ms. King (or her Pennsylvania phone number) opted to receive the Bon Charge SMS text messages on February 22, 2021, more than a year before she allegedly enrolled in the federal Do Not Call Registry. Bon Charge did not seek out Ms. King, rather, she specifically sought out Bon Charge. The response SMS text message Bon

Charge sent Ms. King thanked her for subscribing and advised her that she could withdraw her consent to receive messages by texting "STOP." Mant Decl. at Ex. A, Line 3.

Ms. King did not text "STOP" at any point. Approximately three and a half years after subscribing to receive Bon Charge messages, and being advised by the messages that she could withdraw her consent to receive SMS text messages, Ms. King threatened litigation against Bon Charge. When advised of possible litigation, Andy Mant immediately unsubscribed Ms. King and has ensured she will never receive any future communications from the company. Mant. Decl. ¶ 22.

While Ms. King will likely argue that Bon Charge's SMS text message did not strictly meet every requirement of the TCPA, it is clear that the TCPA was not designed to create opportunities for plaintiffs like Ms. King to exploit the law by opting to receive messages, accumulating those messages for years in order to seek the maximum allowable statutory damages, and then suing to put an Australian company out of business. Ms. King provided prior express consent by texting her mobile number and keyword to Bon Charge in exchange for discounts to be received via telemarketing messages, and therefore, does not have a claim.

## V.    <u>CONCLUSION</u>

WHEREFORE, Bon Charge respectfully requests that for the reasons stated herein, this

Court GRANT the instant Motion and DISMISS Plaintiff's Complaint against Bon Charge for:

(1) lack of personal jurisdiction; and (2) failure to state a claim.

Respectfully submitted this 27th day of March, 2025.

DORSEY & WHITNEY (DELAWARE) LLP

 /s/ Alessandra Glorioso
Alessandra Glorioso (#5757)
300 Delaware Avenue, Suite 101
Wilmington, DE 19801
Telephone: (302) 425-7171
Facsimile: (302) 425-7177
E-mail: glorioso.alessandra@dorsey.com

Theresa M. Bevilacqua (*Pro Hac Vice forthcoming*)
Ashley Repp (*Pro Hac Vice forthcoming*)
DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
Telephone:  (612) 340-2600
Email:  bevilacqua.theresa@dorsey.com
          repp.ashley@dorsey.com

*Attorneys for Defendant Bon Charge*