# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

PHYLLIS KING, on behalf of herself and others
similarly situated,

     Plaintiff,

v.

BON CHARGE, an Australian company

     Defendant.

Civil Action No. 1:25-cv-00105-RGA

JURY TRIAL DEMANDED

---

## DEFENDANT'S BRIEF IN SUPPORT OF
## MOTION TO DISMISS AMENDED COMPLAINT
## PURSUANT TO FEDERAL RULES OF CIVIL
## PROCEDURE 12(b)(2) AND 12(b)(6)

---

Alessandra Glorioso (DE Bar No. 5757)
DORSEY & WHITNEY LLP
300 Delaware Avenue, Suite 1010
Wilmington, Delaware 19801
Telephone: (302) 425-7171
Fax: (302) 425-7177
Email: glorioso.alessandra@dorsey.com

Theresa M. Bevilacqua (*Pro Hac Vice forthcoming*)
Ashley Repp (*Pro Hac Vice forthcoming*)
DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
Telephone: (612) 340-2600
Email: bevilacqua.theresa@dorsey.com
     repp.ashley@dorsey.com

*Attorneys for Defendant Bon Charge*

# TABLE OF CONTENTS

I.      INTRODUCTION ...............................................................................................1

II.     FACTUAL BACKGROUND.............................................................................3

    A.      The Parties and Their Connection to the Forum. .....................................3

    B.      Plaintiff Initiates SMS Contact with Bon Charge....................................8

    C.      Plaintiff's Interactions with Bon Charge. ...............................................8

III.    LEGAL STANDARD.........................................................................................9

    A.      Dismissal for Lack of Personal Jurisdiction Under F.R.C.P. 12(b)(2). ................9

    B.      Dismissal for Failure to State a Claim Under 12(b)(6)............................9

IV.     ARGUMENT ....................................................................................................10

    A.      This Court Lacks Personal Jurisdiction Over Bon Charge and Plaintiff's
        Claims Against Bon Charge Must Be Dismissed Under F.R.C.P. 12(b)(2). .........10

        1.      This Court Lacks General Jurisdiction Over Bon Charge. .......................11

        2.      This Court Lacks Specific Jurisdiction over Bon Charge.........................12

            a.      Bon Charge Has Not "Purposefully Directed" its Activities
                at Delaware Nor Do the Alleged Claims Arise Out of Any
                Conduct by Bon Charge in Delaware. .........................................12

    B.      No Agency Relationship Exists between Bon Charge and Any of the
        Entities Labeled as "Agents" by Plaintiff. .............................................14

        1.      Asserting Personal Jurisdiction Over Bon Charge Would Not
            Comport With Traditional Notions of Fair Play and Substantial
            Justice.......................................................................................16

    C.      Plaintiff's Claims Against Bon Charge Also Fail to State a Claim for
        Relief Under F.R.C.P 12(b)(6) and Must be Dismissed. ........................18

V.      CONCLUSION.................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abedi v. New Age Med. Clinic, PA*,
    2018 U.S. Dist. LEXIS 105932 (E.D. Cal. June 25, 2018)....................................13

*Ashcroft v. Iqbal*,
    556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ........................................9

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)........................................9

*Bell Helicopter Textron, Inc. v. C & C Helicopter Sales, Inc.*,
    295 F. Supp. 2d 400 (D. Del. 2002)......................................................................10

*Blow v. Bijora, Inc.*,
    855 F.3d 793 (7th Cir. 2017) ..........................................................................19, 20

*Blue Water Int'l, Inc. v. Hattrick's Ir. Sports Pub, LLC*,
    Case No. 8:17-cv-1584-T-23AEP, 2017 U.S. Dist. LEXIS 154121, 2017 WL
    4182405 (M.D. Fla. Sept. 21, 2017) .....................................................................16

*BP Chems. Ltd. v. Formosa Chem. & Fibre Corp.*,
    229 F.3d 254 (3d Cir. 2000)..................................................................................12

*Brown v. Interbay Funding, LLC*,
    No. 04-617-SLR, 2004 U.S. Dist. LEXIS 23471 (D. Del. Nov. 8, 2004) ..............15

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)..................................16, 17

*Campbell-Ewald Co. v. Gomez*,
    577 U.S. 153 (2016)..............................................................................................13

*Carteret Sav. Bank, FA v. Shushan*,
    954 F.2d 141 (3d Cir. 1992)....................................................................................9

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014)..............................................................................................11

*Fischer v. Hilton*,
    549 F. Supp. 389 (D. Del. 1982)...........................................................................13

*Fisher v. Townsends, Inc.*,
    695 A.2d 53 (Del. 1997) .......................................................................................15

*Giangola v. Walt Disney World Co.*,
    753 F. Supp. 148 (D.N.J. 1990) .......................................................................16

*Goodyear Dunlop Tires Operations, S.A v. Brown*,
    564 U.S. 915, 131 S. Ct. 2846, 180 L. Ed. 2d 796 (2011) .....................................11

*IMO Indus., Inc. v. Kiekert AG*,
    155 F.3d 254 (3d Cir. 1998)...........................................................................10

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945)................................................................................10, 16

*Komaiko v. Baker Techs., Inc.*,
    No. 19-cv-03795-DMR, 2020 U.S. Dist. LEXIS 70162 (N.D. Cal. Apr. 20,
    2020) ................................................................................................13, 14

*Mayer v. Belichick*,
    605 F.3d 223 (3d Cir. 2010)............................................................................9

*Miller Yacht Sales, Inc., v. Smith*,
    384 F.3d 93 (3d Cir. 2004)..............................................................................9

*Pats Aircraft, LLC v. Munich*,
    197 F. Supp. 3d 663 (D. Del. 2016)..................................................................13

*Patterson by Patterson v. F.B.I.*,
    893 F.2d 595 (3d Cir. 1990)............................................................................9

*Provident Nat'l Bank v. California Federal Sav. & Loan Assoc.*,
    819 F.2d 434 (3d Cir. 1987)............................................................................9

*Reese v. Marketron Broad Sols., Inc.*,
    2018 U.S. Dist. LEXIS 77319 (E.D. La. May 8, 2018).........................................19

*Rocke v. Pebble Beach Co.*,
    541 Fed. App'x 208 (3d Cir. 2013) ..................................................................11

*Sathianathan v. Pac. Exch., Inc.*,
    248 Fed. Appx. 345 (3d Cir. 2007)...................................................................13

*Thorn EMI N. Am. Inc. v. Micron Tech., Inc.*,
    821 F. Supp. 272 (D. Del. 1993)......................................................................12

*Time Share Vacation Club v. Atlantic Resorts, Ltd.*,
    735 F.2d 61 (3d Cir. 1984)..............................................................................9

*Town of Georgetown v. David A. Bramble, Inc.*,
    No. 15-554-SLR, 2016 U.S. Dist. LEXIS 32793 (D. Del. Mar. 15, 2016) ...............15

*Van Patten v. Vertical Fitness Grp., LLC*,
  847 F.3d 1037 (9th Cir. 2017) ...................................................................19, 20

*Winner v. Kohl's Dep't Stores, Inc.*,
  No. 16-1541, 2017 U.S. Dist. LEXIS 131225 (E.D. Pa. Aug. 17, 2017) ...................18, 19, 20

*World-Wide Volkswagen Corp. v. Woodson*,
  444 U.S. 286 (1980)...........................................................................................16

**Statutes**

10 *Del. C.* § 3104(c)(1)-(2) ...........................................................................12

10 *Del. C.* § 3104(c)(1)-(4) ...........................................................................10

47 U.S.C. § 227(c)(2) ....................................................................................20

47 C.F.R. § 64.1200(c)(1) .............................................................................20

Telephone Consumer Protection Act 47 U.S.C. § 227(c)(5) .........................................1

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(2) ..................................................2, 9, 10,13, 14

Federal Rule of Civil Procedure 12(b)(6) .................................................2, 3, 9,13, 18

# I.    INTRODUCTION

In a desperate attempt to manufacture a basis for personal jurisdiction over Australian Defendant Bon Charge f/k/a Blublox Pty Ltd. ("Defendant" or "Bon Charge"), Plaintiff Phyllis King ("Plaintiff" or "Ms. King") filed an Amended Complaint that includes photographs of a personal vacation taken by the Bon Charge's co-founders and lobs in examples of *other companies* (not named in the Complaint) having a connection to Delaware but no connection to the claims alleged. The Amended Complaint does nothing to advance Plaintiff's burden to demonstrate that Bon Charge, a small, Australian wellness company, violated the Telephone Consumer Protection Act ("TCPA") 47 U.S.C. § 227(c)(5) ('TCPA") or establish this Court's personal jurisdiction over Bon Charge. Instead, the Amended Complaint reflects a strange, misguided effort to shame and misrepresent Bon Charge's co-founders personally. Contrary to Ms. King's amendments, photographs from a couple's an anniversary vacation to the United States (but not to Delaware) and a designer handbag cannot create personal jurisdiction over an Australian company with *no* offices in the State of Delaware (or any state within the United States), *no* registered agent for service of process, *no* principal place of business on this continent, and *no* direct marketing or solicitation conduct directed to the State of Delaware. Defendant has no expectation of being haled into court in Delaware, nor has the Plaintiff alleged any legitimate connection between Bon Charge and Delaware.

Ms. King on behalf of herself and others similarly situated, filed the putative class action Complaint against Bon Charge on January 24, 2025 (D.I. 1), alleging Bon Charge violated the TCPA by sending several unrequested texts to her mobile phone number. The only connection to Delaware alleged was Plaintiff's residence, an allegation insufficient to support even a plausible inference on which personal jurisdiction might exist against the Australian Defendant.

After receiving Bon Charge's brief supporting its Motion to Dismiss the original Complaint, Ms. King filed the Amended Complaint (D.I. 16) in an attempt to cobble together a fragile connection between Bon Charge and the United States (generally) as a basis for personal jurisdiction. Nothing in the Amended Complaint addresses any plausible basis for this Court to exercise personal jurisdiction over Bon Charge. The sole connection to Delaware added in the amendments is Bon Charge's alleged collaborations with a handful of independent companies incorporated, but not operating, in Delaware. (D.I. 16 at ¶ 5, 24, 27, 28, 31).

The claims against Bon Charge must be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). First, this Court lacks both general and specific personal jurisdiction over Bon Charge. With respect to general jurisdiction, Bon Charge is a small, husband-and-wife owned Australian proprietary limited (Pty Ltd) company with its principal place of business in Perth, Australia, and is not "at home" in Delaware. Declaration of Andy Mant in Support of Motion to Dismiss ("Mant Decl.") ¶ 5. With respect to specific jurisdiction, the requirements of "purposeful availment" or "purposeful direction" of activities toward a forum state have not and cannot be met.

Ms. King, despite alleging she is a Delaware resident, maintains a Pennsylvania mobile phone number, and alleges that Bon Charge violated the TCPA when it sent her SMS text messages to her mobile phone number, some of which were sent outside of the hours of 9 p.m. to 8 a.m. D.I. 16 ¶¶ 52, 53, 55. None of the SMS text messages forming the basis of Plaintiff's Complaint involve a Delaware phone number, or otherwise involve the State of Delaware. The mere fact that Ms. King alleges she was a resident of Delaware when she received the alleged SMS text messages, is insufficient to establish personal jurisdiction over Bon Charge. Bon Charge's relationship to claims asserted are with the Plaintiff's Pennsylvania phone number and

some collaborative brand partnerships with companies incorporated in Delaware. Ms. King does not, and cannot, allege that Bon Charge itself has a connection with Delaware.

Second, Ms. King fails to state a claim under Rule 12(b)(6). Based on the communications log Bon Charge obtained from its SMS messaging provider, Ms. King's Pennsylvania phone number *initiated* the first SMS text message *to* Bon Charge by texting a "keyword" to obtain a discount code. Only after Ms. King's Pennsylvania phone number texted Bon Charge did Bon Charge send SMS messages and information regarding its products and promotions to Ms. King's mobile number. *See* Mant Decl. at Ex. A.

Ms. King's allegations that a Perth, Australia based company violated the TCPA fall flat when Bon Charge does not engage in spam-like texting, only sends messages to mobile numbers who opt-in or subscribe, and Ms. King did nothing to stop or opt out of receiving messages for a three- and half-year period. The TCPA was not meant to allow a Plaintiff to seek damages for SMS text messages she directly initiated and allowed to accumulate for nearly four years.

## II.     FACTUAL BACKGROUND

### A.     The Parties and Their Connection to the Forum.

Bon Charge is an Australian company, headquartered in Perth, and co-founded by husband-and-wife Andy Mant and Katie Mant. Mant Decl. ¶ 3. Originally named "BluBlox," the company rebranded with the name Bon Charge in June 2022 and has operated under that name since. Mant Decl. ¶ 3. Bon Charge sells a host of wellness products and services, with a mission to make premium, science-backed products that help users enhance every aspect of their well-being. Mant Decl. ¶¶ 3, 6. While the U.S. is, of course, a desirable market, Bon Charge has no physical presence in any state within the U.S. Mant Decl. ¶ 7. Bon Charge does not maintain a registered agent for service or process, does not have a U.S. bank account, nor does it maintain

any manufacturing, design, or distribution footprint in the U.S. Mant Decl. ¶ 7. Bon Charge is solely an e-commerce business as it relates to U.S. customers and subscribers. Mant Decl. ¶ 8.

As a small company, Bon Charge never buys phone numbers, nor does it directly solicit consumers. Mant Decl. ¶ 12. Bon Charge does not engage in a practice of sending spam-like texts to random phone number and has never purposefully directed any marketing to the State of Delaware. Mant Decl. ¶ 12. Nor has Bon Charge had any special promotions for Delaware customers or subscribers. Mant Decl. ¶ 8. Instead, prospective consumers can request additional information, including promotional codes and company communications, by opting-in through the Bon Charge website platform, by texting codes from their mobile devices, by entering a code and mobile phone number on the Bon Charge website, or by agreeing to check-out terms and conditions that include company communications. Mant Decl. ¶ 13. Bon Charge does not use an automated dialing system ("ADS") to spam text or call any person in any country. Mant Decl. ¶ 14. Rather, Bon Charge offers all potential customers the option to "subscribe" to receive emails or SMS text messages offering discounts, promotional offers, and information on new products and services offered by the company. Mant Decl. ¶ 13. These marketing activities are not directed toward, or otherwise unique to, Delaware. Mant Decl. ¶ 8.

From 2021 until July 2024, Bon Charge used PostScript iO, an international company that provides e-commerce brands with SMS text messaging platforms,[1] for automating and sending SMS text messages to individuals in the United States, Canada, and Puerto Rico, who opted into receiving company communications. Mant Decl. ¶ 18. Bon Charge sent a text message to all subscribers in June 2022, advising customers that it had rebranded and changed its name

---

[1] Postscript iO creates SMS programs for e-commerce websites. *See* About Us – Postscript, (last visited April 24, 2025), https://postscript.io/about-us.

from BluBlox to Bon Charge. Mant Decl. ¶ 23; *see also* Mant Decl. at Ex. A, Lines 75. Several messages in a row contained both names so that subscribers could identify the name change and rebrand. Mant Decl. at Ex. A, Lines 75-94. According to its public website, Postscript iO prides itself on being a "fully remote" company, [2] allegedly incorporated in Delaware. D.I. 16 ¶ 27.

In July 2024, Bon Charge changed its provider for SMS text messaging from PostScript iO to Klaviyo, a Boston, Massachusetts headquartered company,[3] for SMS text messaging in the United States. Mant Decl. ¶ 11, 18. Like Postscripts iO, Klaviyo is an internationally leveraged communications platform used for automating and sending SMS text messages to consenting individuals in the United States, Canada, United Kingdom, Ireland, Germany, Netherlands, France, Belgium, Austria, Spain, Switzerland, Denmark, Sweden, Norway, Finland, Italy, Portugal, Australia, and New Zealand.[4] Despite its very global presence, Klaviyo is allegedly incorporated under the laws of Delaware. D.I. 16 ¶ 27. Neither Klaviyo nor Postscript iO is authorized to do business, accept service, or otherwise act as an agent on behalf of Bon Charge. Both companies only provided SMS text messaging services to Bon Charge. Mant Decl. ¶ 11.

Because Bon Charge is a small Australian company, it does not have a self-sustained global network to facilitate the purchase of products on a global scale. Mant Decl. ¶ 15. Bon Charge uses the services of a Merchant of Record company called Reach, headquartered in

---

[2] Postscript iO notes it offers a "fully remote company experience," with an SMS Ecomm Sales Center in Phoenix and Fondue HQ in Tel Aviv, Israel. It does not maintain an office in Delaware. *See* Careers at Postscript – Postscript, (last visited April 24, 2025), https://postscript.io/careers.
[3] Klaviyo notes on its website that it maintains its global headquarters in Boston, Massachusetts, and has offices in Denver, San Francisco, London, Dublin, and Sydney, Australia. It does not maintain an office in Delaware. *See* What is Klaviyo: About Our B2C CRM Platform - Klaviyo (last visited April 24, 2025), https://klaviyo.com/about.
[4] Klaviyo website lists the countries that to which it supports SMS messages. *See* Where is Klaviyo SMS Available? – Klaviyo (last visited April 24, 2025), https:// help.klaviyo.com/hc/en-us/articles/4402914866843.

Calgary, Alberta, Canada, to process product purchase payments.[5] Mant Decl. ¶ 15. Reach is a

large, internationally known and established Merchant of Record that supports more than 200

global markets and 130 different currencies. Reach operates using subdivisions based on the

purchaser's country, including Reach Ltd. ("Reach Canada"), With Reach (Australia) Pty. Ltd.

("Reach Australia"), and With Reach (USA) LLC ("Reach USA").[6] Mant Decl. ¶ 15. While

Plaintiff alleges Reach's American subdivision is incorporated in Delaware (D.I. 16 ¶ 28),

neither Reach, nor any of its subdivisions, is authorized to conduct business, accept service, or

otherwise act as an agent on behalf of Bon Charge. Mant Decl. ¶ 15.

Due to its size, Bon Charge has a limited marketing budget. Mant Decl. ¶ 16. Bon Charge

maintains a link on its website for influencers around the world to apply for an opportunity to

promote Bon Charge products through their social media accounts as "Ambassadors."[7] Mant

Decl. ¶ 16. Partnering with influencers allows Bon Charge to engage in low-cost, low-

commitment product promotion, while the influencer receives product discounts and a small

commission. Mant Decl. ¶ 16. Bon Charge does not have any Delaware resident Ambassadors,

nor any Ambassadors that target their posts at Delaware. Mant. Decl. ¶ 16. Ambassadors are not

authorized to conduct business, accept service, or otherwise act as an agent of Bon Charge. *Id*.

Much like its Ambassador program, Bon Charge has collaborated with other small,

burgeoning U.S. based wellness companies, like Erewhon and Truemed, to increase Bon

---

[5] Reach maintains a LinkedIn profile listing its headquarters in Calgary. *See* Reach: Overview – LinkedIn (last visited April 24, 2025), https:// www.linkedin.com/company/with-reach/.
[6] Reach details its international capacity to serve more than 200 markets and support more than 130 currencies. *See* Simplify Cross-Border Operations with a Merchant of Record – Reach (last visited April 24, 2025), https://www.withreach.com/merchant-of-record.
[7] *See* Team BON CHARGE Ambassador Programme – Bon Charge (last visited April 24, 2025), https://boncharge.com/pages/boncharge-ambassadorprogramme?srsltid=AfmBOoogVrFT8hwFC4WLP7gqchbjEJIL5D_922GlLvWl2buUGAiXB_i6.

Charge's visibility as a wellness brand without significant marketing expense. Mant Decl. ¶ 17. Truemed is a small, privately owned start-up with less than 50 employees.[8] While it is incorporated under the laws of Delaware, Truemed maintains its headquarters in Austin, Texas. D.I. 16 ¶ 27.[9] Truemed allows medically qualified users to purchase medically appropriate products using their HSA or FSA funds, including some Bon Charge products.[10] Truemed is not authorized to conduct business, accept service, or otherwise act as an agent of Bon Charge.

Similarly, Bon Charge has collaborated with Eerewhon, a small, twelve store, wellness focused grocery chain, headquartered and operating solely in California, to promote the Bon Charge brand. Mant Decl. ¶ 17.[11] Erewhon's social media accounts have referenced Bon Charge products in social media posts. Mant Decl. ¶ 17**.** Erewhon is not authorized to conduct business, accept service, or otherwise act as an agent of Bon Charge. Mant Decl. ¶ 17.

Ms. King alleges that she is a resident of Delaware, however, she maintains a Pennsylvania based mobile telephone number. D.I. 16 ¶¶ 5, 50. She alleges that she registered her Pennsylvania telephone number on the national "Do-Not-Call" registry some time in 2022. D.I. 16 ¶ 2. Ms. King alleges that Bon Charge violated the TCPA when it sent her SMS text messages from 2021 until 2024. D.I. 16 ¶ 2. Ms. King alleges that she, and others similarly situated, have been harmed by these texts tying up her telephone line, using her time, and

---

[8] Truemed maintains a corporate LinkedIn page detailing key information about the company. *See* Truemed: Overview – LinkedIn (last visited April 25, 2025), https:// www.linkedin.com/company/truemedpayments/.
[9] Truemed's corporate LinkedIn page identifies Austin Texas as its headquarters. *See id*.
[10] Bon Charge's website includes a link describing who can use Truemed to purchase Bon Charge products with HSA or FSA funds. *See* HSA/FSA Fund Eligibility In Partnership With Truemed – Bon Charge (last visited April 24, 2025), https:// boncharge.com/pages/hsa-fsa.
[11] Erewhon has twelve store locations and exclusively operates in the state of California from its Los Angeles Headquarters. *See* Erewhon: Overview – LinkedIn (last visited April 24, 2025), https:// www.linkedin.com/company/erewhon/; *see also* Locations – Erewhon (last visited April 24, 2025), https:// erewhon.com/locations.

preventing her from receiving legitimate communications. D.I. 16 ¶ 58. Ms. King further alleges a new, not yet recognized claim for "Quiet Hours" violations. While no court has determined that this is a cognizable claim, Ms. King asserts that Bon Charge violated the TCPA when it sent her SMS text messages between the hours of 9 p.m. and 8 a.m. D.I. 16 ¶¶ 52, 53, 55.

**B.**    **Plaintiff Initiates SMS Contact with Bon Charge.**

On or about February 22, 2021, Ms. King, through her Pennsylvania phone number, sent an opt-in text message to Bon Charge via a "keyword" which is a common method for opting into promotional messages from e-commerce businesses and online retailers. Mant Decl. ¶ 20. Based on the content of the message sent from Ms. King's number, she texted more than the keyword "BLUBLOXSAVE15"; it appears she texted the entirety of the explanation for texting a keyword to obtain a promotional discount. *See* Mant Decl. at Ex. A, Line 1. Ms. King then received a subscriber confirmation message from Bon Charge thanking her for subscribing, advising that message and data rates may apply, messages are recurring, and advising her she could opt-out of receiving SMS text messages by texting "STOP". *See* Mant Decl. at Ex. A, Line 2. Over the following *three and a half years*, until she texted "STOP" in October 2024, Ms. King received SMS messages from Bon Charge and never once complained or replied with "STOP" to end the allegedly unwanted messages. All of the text messages, including the three referenced in Ms. King's Complaint, were sent by Bon Charge to the phone number that opted-in.

**C.**    **Plaintiff's Interactions with Bon Charge.**

At all times, the interactions between Ms. King and Bon Charge were limited to the SMS text messages. *See generally,* D.I. 16. Ms. King did not make any purchases from Bon Charge, nor did Bon Charge send products to Ms. King's Delaware address. Mant Decl. at ¶ 24. Ms. King does not even substantiate whether the SMS messages she received from Bon Charge were all received by her Pennsylvania phone number while she was physically in the State of

Delaware. *See* D.I. 16. Simply put, Bon Charge has no connection to Delaware, apart from Ms. King allegedly residing in the state.

## III.     LEGAL STANDARD

### A.     Dismissal for Lack of Personal Jurisdiction Under F.R.C.P. 12(b)(2).

Once a defendant raises the question of personal jurisdiction, the plaintiff bears the burden to prove, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction. *Carteret Sav. Bank, FA v. Shushan,* 954 F.2d 141, 146 (3d Cir. 1992); *see also Miller Yacht Sales, Inc., v. Smith,* 384 F.3d 93, 97 (3d Cir. 2004). To meet this burden, plaintiff must establish with reasonable particularity sufficient contacts between the defendant and forum state. *Provident Nat'l Bank v. California Federal Sav. & Loan Assoc.*, 819 F.2d 434 (3d Cir. 1987). Because Rule 12(b)(2) necessarily involves resolution of factual issues outside of the pleadings, plaintiff may produce sworn affidavits or other competent evidence to support its burden. *See Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 67 n.9 (3d Cir. 1984). The plaintiff cannot rely on "mere allegations" to meet her burden of establishing personal jurisdiction. *Patterson by Patterson v. F.B.I.*, 893 F.2d 595, 604 (3d Cir. 1990).

### B.     Dismissal for Failure to State a Claim Under 12(b)(6).

Dismissal of a complaint is appropriate under F.R.C.P 12(b)(6) for plaintiff's failure to state a claim if the complaint does not contain facts sufficient to state a claim that is facially plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677-78, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). The factual allegations must include more than just a formulaic recitation of the elements of the claims. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). On a motion to dismiss, the court is limited to a review of the allegations in the complaint and any exhibits attached thereto, as well as matters of public record incorporated by reference. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

# IV.    ARGUMENT

## A.    This Court Lacks Personal Jurisdiction Over Bon Charge and Plaintiff's Claims Against Bon Charge Must Be Dismissed Under F.R.C.P. 12(b)(2).

When determining whether personal jurisdiction exists over a defendant, the Court must conduct both a statutory and constitutional due process inquiry. *Bell Helicopter Textron, Inc. v. C & C Helicopter Sales, Inc.*, 295 F. Supp. 2d 400, 403 (D. Del. 2002). For the statutory inquiry, when a defendant is not a resident of the forum, the court must determine whether the defendant's actions make it subject to Delaware's long-arm statute. *See IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998). Delaware's long-arm statute authorizes jurisdiction over a nonresident who in person or through an agent: (1) transacts any business or performs any character of work or service in the State; (2) contracts to supply services or things in this State; (3) causes tortious injury in the State by an act or omission in this State; (4) causes tortious injury in the State or outside the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State, or derives substantial revenue from services or things used or consumed in the State. 10 *Del. C.* § 3104(c)(1)-(4). Turning to the constitutional inquiry, due process requires a nonresident defendant have certain minimum contacts with the forum state so that maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Here, this Court lacks both general and specific jurisdiction to exercise personal jurisdiction over Bon Charge, as set forth in more detail below. Indeed, any alleged minimum contacts Bon Charge might have with the State of Delaware would not meet the statutory or constitutional requirements, or otherwise comport with traditional notions of fair play and substantial justice. As such, Ms. King's complaint against Bon Charge must be dismissed.

### 1. This Court Lacks General Jurisdiction Over Bon Charge.

"General jurisdiction, or all-purpose jurisdiction, permits a court to exercise jurisdiction over a defendant for any and all causes of action arising from any of the defendant's activities, even if those activities occurred outside the forum state." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014). But, "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Daimler*, 571 U.S. at 137. "With respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction'" because these places have the benefit of being unique and easily ascertainable, and a corporation may reasonably anticipate being haled into court in either place. *Id.* Subsection (c)(4) of Delaware's long-arm statute provides for general jurisdiction if the defendant's contacts are so "continuous and systematic as to render them essentially at home in the forum state." *Goodyear Dunlop Tires Operations, S.A v. Brown*, 564 U.S. 915, 919, 131 S. Ct. 2846, 180 L. Ed. 2d 796 (2011) (quoting *Int'l Shoe*, 326 U.S. at 317) (internal quotations omitted). If general jurisdiction does not exist, the court cannot exercise personal jurisdiction over unrelated activities in the forum. *See Rocke v. Pebble Beach Co.*, 541 Fed. App'x 208, 210 (3d Cir. 2013).

Here, Plaintiff alleges that Bon Charge sent SMS text messages to her Pennsylvania phone number, and that she happens to reside in the state of Delaware. D.I. 16 ¶¶ 5, 50. It is clear that this Court does not have general jurisdiction based on the facts alleged in Ms. King's Amended Complaint. Bon Charge is a privately held, husband-and-wife owned company based in Perth, Australia. Mant Decl. ¶ 5. Bon Charge's principal place of business is in Perth, Australia, where the small Bon Charge team manages the company's day-to-day affairs. Mant Decl. ¶ 9. Bon Charge is not authorized to conduct business in Delaware, it is not incorporated in Delaware, it does not maintain any offices, warehouses, manufacturing plants, bank accounts, phone numbers, or other physical presence in the United States, let alone Delaware. Mant Decl.

¶ 7. In addition, Bon Charge does not have any contacts so "continuous and systemic" as to render it at home in Delaware. Ms. King has not even pleaded she received these messages while in Delaware. Ms. King pleads only that she is a Delaware resident, with a Pennsylvania mobile phone number, and that Bon Charge works with some companies that happen to be incorporated in Delaware. In short, Ms. King has failed to plead a sufficient plausible basis to support the possibility of finding general personal jurisdiction over Bon Charge

### 2. This Court Lacks Specific Jurisdiction over Bon Charge.

Specific jurisdiction "exists when the defendant has 'purposefully directed' his activities at residents of the forum and the litigation results from alleged injuries that 'arise out of or related to' those activities." *BP Chems. Ltd. v. Formosa Chem. & Fibre Corp.*, 229 F.3d 254, 259 (3d Cir. 2000) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)). Under the Delaware long-arm statute, specific jurisdiction may exist where an entity "1) transacts any business or performs any character of work or service in the State; 2) contracts to supply services or things in this State." 10 *Del. C.* § 3104(c)(1)-(2).

Here, Ms. King's allegations that Bon Charge sent SMS text messages to her Pennsylvania phone number, and that Bon Charge has interacted with corporate entities incorporated in Delaware, without more, are insufficient to establish specific jurisdiction.

### a. Bon Charge Has Not "Purposefully Directed" its Activities at Delaware Nor Do the Alleged Claims Arise Out of Any Conduct by Bon Charge in Delaware.

Bon Charge has not "purposefully directed" its activities at Delaware and the protections of Delaware laws; and therefore, specific jurisdiction does not exist under Section 3104(c)(1)-(3). *Thorn EMI N. Am. Inc. v. Micron Tech., Inc.,* 821 F. Supp. 272, 274 (D. Del. 1993). Delaware law is clear that telephone calls into the State alone, are generally insufficient to justify an exercise of personal jurisdiction over a foreign defendant consistent with due process. *See*

*Sathianathan v. Pac. Exch., Inc.*, 248 Fed. Appx. 345, 347 (3d Cir. 2007).[12] Similarly, telephone

calls into the state are insufficient to constitute the transaction of business in Delaware. *See Pats*

*Aircraft, LLC v. Munich*, 197 F. Supp. 3d 663, 671 (D. Del. 2016); *see also Fischer v. Hilton*,

549 F. Supp. 389, 391 (D. Del. 1982) (finding that telephone calls without action by the

Defendants within the state of Delaware does not constitute transacting business).

      In TCPA cases specifically, foreign defendants (whether sister-state or non-U.S. entities)

must do more than place a call or text to plaintiff who happens to reside in a state before courts

will find sufficient minimum contacts to satisfy due process. *See Komaiko v. Baker Techs., Inc.*,

No. 19-cv-03795-DMR, 2020 U.S. Dist. LEXIS 70162 (N.D. Cal. Apr. 20, 2020); *Abedi v. New*

*Age Med. Clinic, PA*, 2018 U.S. Dist. LEXIS 105932 (E.D. Cal. June 25, 2018). Courts have

declined to exercise personal jurisdiction over a foreign defendant where the defendant has no

reason to know their conduct would be felt in the forum state. *See Komaiko*, 2020 U.S. Dist.

LEXIS 70162 at *21 (citing *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1145 (9th Cir. 2017) and

holding "mere knowledge of the statistical probability that its activities will have some impact in

[the forum state] is too attenuated to support the exercise of personal jurisdiction in this state.")

      *Komaiko v. Baker Techs., Inc.*, is persuasive, as the facts are nearly identical to those at

issue here. In *Komaiko*, plaintiffs were the named representatives in a putative class action

asserting claims for violations of the TCPA against Baker Technologies Inc. ("Baker"). *Id.* at *2.

Baker moved to dismiss for lack of personal jurisdiction and failure to state a claim under

F.R.C.P. 12(b)(2) and 12(b)(6). *Id.* Baker was a Delaware corporation with its principal place of

business in Colorado and the named plaintiffs were California residents with mobile phone

---

[12]  Ms. King and Bon Charge agree that SMS text messages are considered the equivalent of
telephone calls under the TCPA. *See Campbell-Ewald Co. v. Gomez,* 577 U.S. 153, 156 (2016).

numbers bearing Illinois and Kansas telephone area codes. *Id.* at 2, 7, 9. Plaintiffs visited

marijuana dispensaries in Colorado and Washington, and began receiving SMS text messages to

their Illinois and Kansas telephone numbers from those dispensaries. Both dispensaries are

clients of Baker, which deploys marketing communications on behalf of the dispensaries,

including text messaging. *Id.* at 8. In concluding the complaint must be dismissed for lack of

personal jurisdiction under F.R.C.P. 12(b)(2), the court reasoned that a Delaware corporation

with its principal place of business in Colorado had not purposefully directed or expressly aimed

its actions at California. *Id*. at *22. Indeed, the plaintiffs could not meet their burden to show that

Baker "expressly aimed conduct at California through the text messages sent to non-California

numbers from non-California dispensaries." *Id*.

Much like *Komaiko*, Ms. King alleges that she received SMS text messages from the

Australian Bon Charge, to her Pennsylvania telephone number. D.I. 16 ¶¶ 2. Her only allegations

tying her claim to Delaware is that she resides in Delaware and that Bon Charge may interact

with some other corporate entities that are incorporated in Delaware. D.I. 16 ¶ 5. Indeed, Ms.

King offers nothing to support a finding that Bon Charge conducts business in Delaware or

otherwise directs its activities at Delaware. *See generally,* D.I. 16. Nor does Ms. King allege that

Bon Charge had any reason to know her Pennsylvania number had any connection to Delaware.

Because Bon Charge did not "purposefully direct" activities at Delaware, Ms. King's claims

cannot "arise out of" or be "related to" Bon Charge's activities in Delaware.

**B.**     **No Agency Relationship Exists between Bon Charge and Any of the Entities Labeled as "Agents" by Plaintiff.**

As a threshold matter, Plaintiff seems to misunderstand the legal theory of a principal-

agent relationship. Plaintiff's complaint alleges Bon Charge is engaged with numerous entities,

many of which are incorporated under the laws of Delaware, despite maintaining no presence in

Delaware. In describing these relationships, Plaintiff improperly uses the term "agent," which has a very specific legal meaning, one that is not applicable here. Plaintiff's invocation of the term "agent" is an ineffective ploy to avoid dismissal based on lack of personal jurisdiction.

"An agency relationship is created when one party consents to have another act on its behalf, with the principal controlling and directing the acts of the agent." *Fisher v. Townsends, Inc.*, 695 A.2d 53, 57 (Del. 1997) (quoting *Sears Mortgage Corp. v. Rose*, 134 N.J. 326, 634 A.2d 4, 79 (N.J. 1993)). The defining feature of an agency relationship is that the agent is continuously subjected to the will of the principal. *See Town of Georgetown v. David A. Bramble, Inc.,* No. 15-554-SLR, 2016 U.S. Dist. LEXIS 32793, at *8 (D. Del. Mar. 15, 2016*); see also Brown v. Interbay Funding, LLC*, No. 04-617-SLR, 2004 U.S. Dist. LEXIS 23471, at *9 (D. Del. Nov. 8, 2004) (quoting Restatement (Second) of Agency § 1 cmt. b (1958)). The element of continuous subjection to the will of the principal distinguishes the agency relationship from other agreements. *Brown*, No. 04-617-SLR, 2004 U.S. Dist. LEXIS 23471, at *9. Without this particular level of control, one entity that contracts to perform a service for another is merely an independent contractor. *Id*. at 10. Independent contractors are generally not agents. *See Town of Georgetown*, No. 15-554-SLR, 2016 U.S. Dist. LEXIS 32793, at *9 (noting when an independent contractor is, or is not, an agent).

Not a single entity cited by Plaintiff does anything more for Bon Charge than provide specific, independent, contracted-for services. None of the entities can perform business functions, accept service of process, or otherwise act on behalf of Bon Charge. Most important, none of the companies listed are even alleged to be connected with the TCPA claims asserted. Simply collaborating on a social media post or website does not subject an Australian company to personal jurisdiction in the state of incorporation for any and all independent contractors. *See*

*e.g. Blue Water Int'l, Inc. v. Hattrick's Ir. Sports Pub, LLC*, Case No. 8:17-cv-1584-T-23AEP, 2017 U.S. Dist. LEXIS 154121, 2017 WL 4182405, at *3-4 (M.D. Fla. Sept. 21, 2017) (finding that subjecting a nonresident business that advertised on social media "to personal jurisdiction in Florida merely because a Floridian might view the social media 'offend[s] traditional notions of fair play and substantial justice'"); *see e.g. Giangola v. Walt Disney World Co.*, 753 F. Supp. 148, 156 (D.N.J. 1990) (noting that in the "age of modern advertising and national media publications and markets" making a defendant "amenable to suit wherever the advertisements were aired would substantially undermine the law of personal jurisdiction").

      **1.**      **Asserting Personal Jurisdiction Over Bon Charge Would Not Comport With Traditional Notions of Fair Play and Substantial Justice.**

      The Constitutional inquiry further confirms that any assertion of personal jurisdiction by this Court over Bon Charge will not comport with the notions of fair play and substantial justice. To exercise personal jurisdiction over a foreign entity, the court must find sufficient minimum contacts between the defendant and forum state so that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). In *Walden v. Fiore*, the Supreme Court explained that "our 'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." 571 U.S. 277, 285 (2014). The relationship must envision "continuing and wide-reaching contacts in the forum state." *Id*. Critical to the due process analysis is that the defendant's contact with the forum state is such that he would reasonably anticipate being haled into court in that forum. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980). It is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. *Burger King Corp. v. Rudzewicz*,

471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235 (1958)). "Purposeful availment" requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *See Id*.

Here, any exercise of personal jurisdiction over Bon Charge would offend the notions of fair play and substantial justice. The Court must look at Bon Charge's contracts with the state of Delaware itself, not its SMS text messages to a Plaintiff with a Pennsylvania phone number allegedly residing in Delaware, or its interactions with businesses that are incorporated under Delaware law. As a small, privately held company with its principal place of business in Perth, Australia, Bon Charge does not have "continuing and wide-reaching" contacts in Delaware, and certainly not to any extent that it would reasonably anticipate being haled into a Delaware court for purposes of defending itself in a lawsuit brought by a Plaintiff who opted into receiving SMS text messages to her Pennsylvania phone number. Nor would Bon Charge have any reason to know that it interacted with businesses incorporated under Delaware law, and that, by those connections alone, Bon Charge could be forced to defend itself in a Delaware court on the other side of the world. Due process certainly does not contemplate that Bon Charge, sending SMS text messages from Australia, to a Pennsylvania phone number, or interacting with an international company that happens to be incorporated under Delaware law, should expect that it purposefully availed itself of conducting activities in Delaware. Simply put, if the Court finds personal jurisdiction over Bon Charge based on these facts, the decision would be made based on random, fortuitous, and attenuated contacts with a plaintiff who alleges no other facts to tie this lawsuit to Delaware apart from her alleged residency in the state and a handful of business interactions with companies incorporated under Delaware law.

**C.**     **Plaintiff's Claims Against Bon Charge Also Fail to State a Claim for Relief Under F.R.C.P 12(b)(6) and Must be Dismissed.**

Ms. King's TCPA claims fail because she opted to receive SMS text messages from Bon Charge. Ms. King alleges that, despite registering her Pennsylvania phone number on the national do-not-call registry, Bon Charge sent her promotional SMS text messages, including some messages between the hours of 9 p.m. and 8 a.m. D.16. 1 ¶¶ 52-55. She alleges that she never requested to receive communications from Bon Charge. D.I. 16 ¶ 48. However, it is clear that she (1) opted to receive messages from Bon Charge in 2021, more than a year before she allegedly registered on the national Do Not Call Registry; (2) received a response to her opt-in message that provided an opportunity to unsubscribe, and (3) sat on those SMS texts messages for years. Now, in her Amended Complaint, Ms. King includes a "Quiet Hours" cause of action, a new and unrecognized area of TCPA litigation for which there is no case law.[13] Ultimately, if Ms. King truly did not want these SMS text messages she could have unsubscribed immediately. The TCPA was simply not designed to provide a windfall to a Plaintiff like Ms. King.

Similar facts exist in *Winner v. Kohl's Dep't Stores, Inc.*, where the court dismissed for failure to state a claim under Rule 12(b)(6). *Winner v. Kohl's Dep't Stores, Inc.*, No. 16-1541, 2017 U.S. Dist. LEXIS 131225 (E.D. Pa. Aug. 17, 2017). In *Winner*, the named plaintiff brought a class action TCPA claim against Kohl's alleging Kohl's sent her unauthorized telemarketing SMS text messages. *Winner* 2017 U.S. Dist. LEXIS 131225 at *2. Ms. Winner saw a sign advertising Kohl's rewards program and inviting plaintiff to enroll via texting a keyword to a Kohl's number. *Id.* She then sent a text message with the keyword to the Kohl's number, which

---

[13] *See* Kyle Dull and Paul Besozzi, New Class Action Threat: TCPA Quiet Hours and Marketing Messages – Squire Patton Boggs (March 11, 2025), https://www.privacyworld.blog/2025/03/new-class-action-threat-tcpa-quiet-hours-and-marketing-messages/.

automatically enrolled her in a reward program. *Id.* Plaintiff proceeded to interact with those SMS text messages, even redeeming a discount code included in the SMS text message. *Id*. at 7. The messages advised the plaintiff she could text "STOP" to unsubscribe from the SMS text messages. *Id.* Finally, after four years of receiving what plaintiff argued were unwanted SMS text messages, she texted "STOP." *Id.* at 8. She was immediately unsubscribed from the Kohl's list and received no additional SMS text messages. *Id.* In ultimately dismissing the case, the court considered the sequence of events, which began with Ms. Winner messaging Kohl's first. *Id* at 20. The SMS text messages also notified the plaintiff she could unsubscribe and explained the procedure for doing so (texting "STOP"). While the plaintiff argued that she never gave her express written consent to receive the messages, as required by the TCPA, the *Winner* court rejected that argument based on the sequence of Ms. Winner starting the text messages, inviting more messages and interacting with the messages for an extended time. *Id*., *see also Reese v. Marketron Broad Sols., Inc*., 2018 U.S. Dist. LEXIS 77319, *14-15 (E.D. La. May 8, 2018).

In addition to *Winner*, two Federal Circuit Courts have held that "when a consumer provides her cell phone number to the caller," she consents to receive messages from the caller so long as the messages are "related to the reason the number was provided." *Blow v. Bijora, Inc.*, 855 F.3d 793, 804 (7th Cir. 2017) (holding plaintiff in TCPA class action provided prior express consent for the text messages received by giving her phone number to the retailer to receive discounts); *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1046 (9th Cir. 2017) (holding the consumer gave prior express consent to receive text messages when he provided his mobile phone number in the first instance to apply for a gym membership and text messages were related to a campaign to have inactive members return to the gym).

Just like the Plaintiffs in *Winner, Blow,* and *Van Patten,* Ms. King initiated the first interaction with Bon Charge and opted to receive Bon Charge text messages by using the keyword "BLUBLOXSAVE15" to receive discounts from Bon Charge. Mant Decl. at Ex. A, Line 2. Based on that record alone, it is clear that Ms. King opted to receive the Bon Charge SMS text messages on February 22, 2021, more than a year before she allegedly enrolled in the Do Not Call Registry. Bon Charge did not seek out Ms. King. She specifically sought out Bon Charge. The first SMS text message Bon Charge sent Ms. King thanked her for subscribing and advised her that she could withdraw her consent by texting "STOP." Mant Decl. at Ex. A, Line 3.

Finally, while TCPA class action lawyers have begun exploring a new litigation angle for violations of 47 U.S.C. § 227(c)(2) and 47 C.F.R. § 64.1200(c)(1), or "Quiet Hours," no court has ruled this is a cognizable claim. Due to the novelty of this theory, there is no case law to guide how this section of the TCPA should apply to text messages, particularly where an individual has subscribed to receive those messages.

While Ms. King will likely argue that Bon Charge's SMS text message did not strictly meet every requirement of the TCPA, it is clear that the TCPA was not designed to create opportunities for plaintiffs like Ms. King to exploit the law by opting to receive messages, accumulating those messages for *years* in order to seek the maximum allowable statutory damages, and then suing to put an Australian company out of business. Ms. King provided prior express consent by texting her mobile number and keyword to Bon Charge in exchange for discounts to be received via telemarketing messages, and therefore, does not have a claim.

## V.  CONCLUSION

WHEREFORE, Bon Charge respectfully requests that for the reasons stated herein, this Court GRANT the instant Motion and DISMISS Plaintiff's Complaint with prejudice.

Respectfully submitted this 24th day of April, 2025.

DORSEY & WHITNEY (DELAWARE) LLP

_/s/ Alessandra Glorioso_
Alessandra Glorioso (#5757)
300 Delaware Avenue, Suite 101
Wilmington, DE 19801
Telephone: (302) 425-7171
Facsimile: (302) 425-7177
E-mail: glorioso.alessandra@dorsey.com

Theresa M. Bevilacqua (*Pro Hac Vice forthcoming*)
Ashley Repp (*Pro Hac Vice forthcoming*)
DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
Telephone:  (612) 340-2600
Email:  bevilacqua.theresa@dorsey.com
        repp.ashley@dorsey.com

*Attorneys for Defendant Bon Charge*