## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

PHYLLIS KING, on behalf of herself and
others similarly situated,

      Plaintiff,

v.

BON CHARGE, an Australian company.

      Defendant.

:
:
:
:
:
:
:
:
:
:
:
:
/

CASE NO. 1:25-cv-00105-RGA

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

R. Grant Dick IV (#5123)
COOCH AND TAYLOR P.A.
1000 N. West Street, Suite 1500
Wilmington, DE 19801
Telephone: 302-984-3800
E-Mail: gdick@coochtaylor.com
*Attorneys for Plaintiff and the Proposed Class*

**OF COUNSEL**
Yeremey O. Krivoshey (SBN 295032)
SMITH KRIVOSHEY, PC
(*pro hac vice* forthcoming)
166 Geary Str STE 1500-1507
San Francisco, CA 94108
Telephone: 415-839-7077
Facsimile: (888) 410-0415
E-Mail: yeremey@skclassactions.com

Aleksandr "Sasha" Litvinov (SBN 95598)
SMITH KRIVOSHEY, PC
(*pro hac vice* forthcoming)
867 Boylston Street 5th Floor #1520
Boston, MA 02116
Telephone: 617-377-7404
Facsimile: (888) 410-0415
E-Mail: sasha@skclassactions.com
*Attorneys for Plaintiff*
*and the Proposed Class*

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ........................................................................................... 1

II.   LEGAL STANDARD REGARDING JURISDICTION ................................... 1

III.  THE COURT HAS JURISDICTION PURSUANT TO RULE 4(k)(2) ........................... 3

  A.  Plaintiff's Claims Arise Under Federal Law ...................................................... 3

  B.  Defendant Insists That No State Has Personal Jurisdiction Over The Defendant .............. 3

  C.  Exercising Jurisdiction Comports With Due Process ........................................... 4

    1.  Defendant Purposefully Directed Its Activities At Residents Of The United States...... 6

    2.  The TCPA Claims Arise Out Of And Relate To Defendant's Activities With The United States ........................................................................ 11

    3.  Assertion of Personal Jurisdiction Is Reasonable And Fair ........................................... 13

IV.   DENFENDANT'S RULE 12(b)(6) ARGUMENTS ARE WITHOUT MERIT .............. 17

V.    CONCLUSION ........................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abedi v. New Age Med. Clinic PA*,
  2018 WL 3155618 (E.D. Cal. June 25, 2018) ...................................................... 10

*Adams v. Unione Mediterranea Di Sicurta*,
  364 F.3d 646 (5th Cir. 2004) ......................................................................... 4

*Blow v. Bijora, Inc.*,
  855 F.3d 793 (7th Cir. 2017) ........................................................................ 18

*Boston Scientific Corp. v. Micro-Tech Endoscopy USA Inc.*,
  2020 WL 229993 (D. Del. Jan. 15, 2020) ....................................................... Passim

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985) ..................................................................................... 5

*Clemens v. McNamee*,
  615 F.3d 374 (5th Cir. 2010) ......................................................................... 2

*Commodity Futures Trading Comm'n v. Cartu*,
  2023 WL 5246360 (W.D. Tex. Aug. 15, 2023) .............................................. 5, 14

*Cross v. State Farm Mutual Auto Ins. Co.*,
  2022 WL 193016 (W.D. Ark. Jan. 20, 2022) ................................................... 10

*Doohan v. CTB Investors, LLC*,
  427 F. Supp. 3d 1034 (W.D. Mo. 2019) .......................................................... 10

*Doyle v. Matrix Warranty Solutions, Inc.*,
  679 F. Supp. 3d 42 (D.N.J. June 26, 2023) ..................................................... 10

*Enzo Life Scis., Inc. v. Hologic Inc.*,
  2018 WL 4660355 (D. Del. Sept. 26, 2018) ...................................................... 9

*Fed. Trade Comm'n v. Educare Centre Servs., Inc.*,
  414 F. Supp. 3d 960 (W.D. Tex. 2019) .................................................... 2, 5, 6, 12

*Flag Co. v. Maynard*,
  376 F. Supp. 2d 849 (N.D. Ill. July 8, 2005) .................................................... 4

*Goodyear Dunlop Tires Op., S.A. v. Brown*,
  564 U.S. 915 (2011) ..................................................................................... 2

*Hanson v. Denckla*,
　357 U.S. 235 (1958) ............................................................................ 14

*In re Automotive Refinishing Paint Antitrust Lit.*,
　358 F.3d 288 (3d Cir. 2004) ................................................................ 3

*ISI Int'l, Inc. v. Borden Ladner Gervais LLP*,
　256 F.3d 548 (7th Cir. 2001) .............................................................. 4

*Jubb v. CHW Grp., Inc.*,
　2025 WL 942961 (D.N.J. Mar. 28, 2025) ........................................ 17

*Komaiko v. Baker Techs., Inc.*,
　2020 WL 1915884 (N.D. Cal. Apr. 20, 2020)............................. 10, 11

*Lyngaas v. Curaden Ag*,
　992 F.3d 412 (6th Cir. 2021) .....................................................Passim

*Merial Ltd. V. Cipla Ltd.*,
　691 F.3d 1283 (Fed. Cir. 2012) ........................................................... 4

*Mey v. Venture Data, LLC*,
　245 F. Supp. 3d 771 (N.D.W.V. Mar. 29, 2017) ............................. 10

*Ott v. Mortg. Investors Corp. of Ohio, Inc.*,
　65 F. Supp. 3d 1046 (D. Or. 2014) ............................................... 5, 12

*Shelton v. Nat'l Gas & Electric, LLC*,
　2019 WL 1506378 (E.D. Pa. Apr. 5, 2019)....................................... 5

*Sielman v. Freedom Mrtg. Corp.*,
　2018 WL 3656159 ............................................................................. 18

*Smith v. Pro Custom Solar LLC*,
　2021 WL 141336 (D.N.J. Jan. 15, 2021)......................................... 18

*Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*,
　563 F.3d 1285 (Fed. Cir. 2009) ............................................. 14, 15, 16

*U.S. v. Swiss Am. Bank, Ltd.*,
　191 F.3d 30 (1st Cir. 1999)............................................................... 4

*Van Patten v. Vertical Fitness Grp., LLC*,
　847 F.3d 1037 (9th Cir. 2017) ......................................................... 18

iii

*Wien Air Alaska, Inc. v. Brandt*,
   195 F.3d 208 (5th Cir.1999) ........................................................................................ 10, 13

*Williams v. Pisa Grp., Inc.*,
   2023 WL 2227697 ................................................................................................................ 18

*Winner v. Kohl's Department Stores, Inc*.,
   2017 WL 3535038 (E.D. Pa. Aug. 17, 2017) ........................................................ 18, 19, 20

**Rules**

Fed. R. Civ. P. 4(k)(2)........................................................................................................Passim

**Regulations**

47 C.F.R. § 64.1200(c)(1) ...................................................................................................... 17

47 C.F.R. § 64.1200(c)(2)(i) .................................................................................................. 18

47 C.F.R. § 64.1200(c)(2) ...................................................................................................... 18

47 C.F.R. § 64.1200(c)(2)(ii) ................................................................................................. 18

47 C.F.R. § 64.1200(f)(8) .................................................................................................. 19, 20

## I.     INTRODUCTION

Defendant hopes to escape the jurisdiction of this Court by claiming there is not a sufficient nexus between its conduct and Delaware, and that it would be unreasonable for it to litigate here.  Under Fed. R. Civ. P. 4(k)(2), however, the relevant "forum" is the United States, and the jurisdictional inquiry must analyze Defendant's contacts with the United States as a whole.  Plaintiff has presented ample evidence showing jurisdiction is appropriate.  None of the following facts are in dispute: Defendant targeted thousands of U.S. consumers with telemarketing text messages using promotions that could only be redeemed by U.S. customers; Defendant sent more than 100 text messages to Plaintiff while she was located in the U.S.; Defendant hired two U.S. companies through which to send these text messages; Defendant regularly sells products to U.S. customers; Defendant has contracted with a U.S. company to fulfill all of its U.S. customer orders; Defendant has hired many U.S. "ambassadors" to market its products within the U.S.; Defendant has registered its products with the Food and Drug Administration and advertises that fact when selling its products to U.S. customers; Defendant's co-founders have sought trademark protection for "Bon Charge" within the U.S.; Defendant has entered into contracts with U.S. companies (like Erewhon) to market products in the U.S.; and Defendant's co-founders are international jet-setters that traveled to both coasts of the U.S. and then used those trips to promote Defendant's business.  *See gen*. Pl.'s First Amended Complaint ("FAC"), ECF No. 16, at ¶¶ 7-36.  Defendant's motion should be denied in full.

## II.     LEGAL STANDARD REGARDING JURISDICTION

"When a defendant moves to dismiss a lawsuit for lack of personal jurisdiction, the plaintiff bears the burden of showing the basis for jurisdiction; in a situation like this, where no evidentiary hearing has been held, the plaintiff must only make a *prima facie* showing that

personal jurisdiction exists." *Boston Scientific Corp. v. Micro-Tech Endoscopy USA Inc*., 2020 WL 229993, at *3 (D. Del. Jan. 15, 2020). "To make out this *prima facie* showing, the plaintiff must establish with reasonable particularity sufficient contacts between the defendant and the forum state." *Id*. (internal quotations omitted). "In reviewing a motion to dismiss for lack of personal jurisdiction, the Court may consider the pleadings, affidavits, declarations and exhibits, and must construe all disputed facts in the plaintiff's favor." *Id*. *See also Fed. Trade Comm'n v. Educare Centre Servs., Inc*., 414 F. Supp. 3d 960, 967 (W.D. Tex. 2019) ("To decide whether a prima facie case exists, the Court must accept as true Plaintiff's 'uncontroverted allegations ... and resolve in its favor all conflict between the facts contained in the parties' affidavits and other documentation.'") (quoting *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010)).

The Supreme Court has recognized two classifications of personal jurisdiction: "general jurisdiction" and "specific jurisdiction." *Id*. (citing *Goodyear Dunlop Tires Op., S.A. v. Brown*, 564 U.S. 915, 919 (2011)). As applicable here, specific jurisdiction encompasses causes of action that arise out of or relate to the defendant's contacts with the forum. *Id*.

While courts analyzing specific jurisdiction typically decide whether a defendant's actions fall within the scope of a state's long-arm statute – the "minimum contacts" test – the dispute here implicates Fed. R. Civ. 4(k)(2), "which serves as a federal long-arm statute." *Id*., 2020 WL 229993, at *4. "Rule 4(k)(2) was enacted by the 1993 amendments to the Federal Rules in order to close a loophole that existed when a foreign defendant had sufficient contacts with the United States to justify the exercise of jurisdiction, but lacked sufficient contacts with any single state to satisfy a state long-arm statute or the due process constraints of the Fourteenth Amendment." *Id.*, 2020 WL 229993, at *4 (cleaned up).

Rule 4(k)(2) allows a court to exercise personal jurisdiction over a defendant if (1) the

plaintiff's claim arises under federal law, (2) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction, and (3) the exercise of jurisdiction comports with due process." *Id*. "Under this provision, a defendant sued under federal law may be subject to jurisdiction based on its contacts with the United States as a whole, when the defendant is not subject to personal jurisdiction in any state." *In re Automotive Refinishing Paint Antitrust Lit*., 358 F.3d 288, 299 n. 14 (3d Cir. 2004). "The Rule is thus meant to allow a district court to exercise personal jurisdiction over a foreign defendant whose contacts with the United States, but not with the forum state, satisfy due process." *Boston Scientific*, 2020 WL 229993, at *4.

## III.    THE COURT HAS JURISDICTION PURSUANT TO RULE 4(k)(2)

### A.    Plaintiff's Claims Arise Under Federal Law

Defendant concedes the first factor under Rule 4(k)(2), as it must, because Plaintiff's claims arise under federal law – the TCPA.  Defendant's March 27, 2025 Brief in Support of Motion to Dismiss, ECF No. 13, at 14 (hereafter, "3/3/27 Mot.") ("Bon Charge concedes that the TCPA is a federal law, and therefore, Ms. King's claims arise under federal law.").  Accordingly, the first factor under Rule 4(k)(2) is satisfied.  *See, e.g. Lyngaas v. Curaden Ag*, 992 F.3d 412, 422 (6th Cir. 2021) (claims under TCPA satisfy first factor under Rule 4(k)(2).

### B.    Defendant Insists That No State Has Personal Jurisdiction Over The Defendant

Defendant also concedes the second factor under Rule 4(k)(2).  In addressing the second factor in its first motion to dismiss, in the sentence immediately after conceding the first factor under Rule 4(k)(2), Defendant stated, "Bon Charge also acknowledges that, as a small, privately held Australian company without any presence in the United States, it may be difficult to identify where in the United States Bon Charge would be subject to any state's courts of general jurisdiction."  3/3/27 Mot. at 14.  Defendant clearly only contested the third factor in its first

3

Motion.  In its current motion, Defendant simply chose to ignore Rule 4(k)(2) entirely.

Every Circuit to have considered this issue has held that "a piecemeal analysis of the existence *vel non* of jurisdiction in all fifty states is not necessary" in determining the second factor.  *See, e.g., Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646, 651 (5th Cir. 2004).  "Rather, so long as a defendant does not concede to jurisdiction in another state, a court may use 4(k)(2) to confer jurisdiction."  *Id.*; *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 552 (7th Cir. 2001); *U.S. v. Swiss Am. Bank, Ltd*., 191 F.3d 30, 40-42 (1st Cir. 1999); *Lyngaas*, 992 F.3d at 422; *Merial Ltd. V. Cipla Ltd*., 691 F.3d 1283, 1294 (Fed. Cir. 2012).  "A plaintiff is *not* required to prove that the defendants are not subject to the jurisdiction of any state."  *Flag Co. v. Maynard*, 376 F. Supp. 2d 849, 853 (N.D. Ill. July 8, 2005) (emphasis added).

Here, Defendant is adamant that it is not subject to jurisdiction in any state's courts of general jurisdiction.  As discussed above, in its first motion to dismiss, Defendant conceded the second factor.  Here, Defendant states it has "no physical presence in any state with the U.S.," "does not maintain a registered agent for service or process, does not have a U.S. bank account, nor does it maintain any manufacturing, design, or distribution footprint in the U.S." Defendant's April 24, 2025 Brief in Support of Motion to Dismiss (hereafter, "Mot."), ECF No. 18, at 3-4.  Because "[D]efendant does not concede to jurisdiction in another state, [this Court] may use 4(k)(2) to confer jurisdiction."  *Adams*, 364 F.3d, 651.

### C.    Exercising Jurisdiction Comports With Due Process

In evaluating whether specific jurisdiction exists under Rule 4(k)(2), the Court must evaluate "whether (1) the defendant purposefully directed its activities at residents of the United States, (2) the claim arises out of or relates to the defendant's activities with the United States, and (3) assertion of personal jurisdiction is reasonable and fair."  *Boston Scientific*, 2020 WL

29993, at *6.  "Under this three-element test, a court may properly assert specific jurisdiction, even if the defendant's contacts are isolated and sporadic, so long as the cause of action arises out of these contacts; indeed even a 'substantial connection' with a forum arising out of a 'single act can support jurisdiction.'"  *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 n. 18 (1985)).  "This is especially the case where the act is itself unlawful, making resultant litigation inherently foreseeable."  *Fed. Trade Comm'n v. Educare Centre Servs., Inc*., 414 F. Supp. 3d 960, 972 (W.D. Tex. 2019).

"In TCPA cases, courts generally find that specific personal jurisdiction exists when a defendant sends a message into the forum state by targeting a phone number in that forum." *Shelton v. Nat'l Gas & Electric, LLC*, 2019 WL 1506378, at *7 (E.D. Pa. Apr. 5, 2019).  *See also, e.g., Educare Center Servs*., 414 F. Supp. 3d at 969-970 ("There should be little question that targeting U.S. consumers with unlawfully deceptive telemarketing calls amounts to purposeful availment of the forum United States and creates a reasonably foreseeable consequence of litigation in the forum."); *Ott v. Mortg. Investors Corp. of Ohio, Inc*., 65 F. Supp. 3d 1046, 1057 (D. Or. 2014) (holding that company that had a telemarketing scheme targeting all 50 states, including those phone numbers with Oregon area codes, "reasonably should have known that telemarketing to Oregon telephone numbers would cause harm to persons in Oregon"); *Commodity Futures Trading Comm'n v. Cartu*, 2023 WL 5246360, at *8 (W.D. Tex. Aug. 15, 2023) ("In TCPA cases, the contacts with the forum state are directly related to the litigation, because targeting U.S. consumers with deceptive calls is both the action that creates jurisdiction and that violates the law.").

Where the plaintiff has met his burden as to the first two factors, "[a]n inference arises that the third factor is satisfied."  *Lyngaas*, 992 F.3d at 423.  In such a situation, "the burden then

shifts to the defendant to show a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Boston Scientific*, 2020 WL 229993, at *7 n. 5.

### 1.    Defendant Purposefully Directed Its Activities At Residents Of The United States

Typically, the only questions in a TCPA jurisdictional dispute concerning the first factor is whether the plaintiff's phone number's area code is within the state where the plaintiff seeks to assert jurisdiction, whether the plaintiff is a resident of that state, and whether the plaintiff was in fact present in the state at the time of the calls. *See Shelton*, 2019 WL 15066378, at *7 (assembling cases and noting that "[s]ome courts find the location of the area code to be dispositive [for purposes of jurisdiction], while other find the residency of the plaintiff or the location where the call was received to be dispositive [for purposes of jurisdiction].").  But those questions all lead to the same result under Rule 4(k)(2) because *the forum is the United States*, and not any particular state. *See Educare Centre Servs., Inc.*, 414 F. Supp. 3d at 969-70 (holding that targeting U.S. consumers with telemarketing calls "amounts to purposeful availment *of the forum United States*") (emphasis added).

Here, Defendant concedes it directed *more than a hundred* telemarketing calls to Plaintiff's U.S. phone number, and does not dispute Plaintiff was a Delaware resident and physically in Delaware at the time of the calls. *See* April 23, 2025 Declaration of Andy Mant (hereafter, "4/23/2025 Mant Decl."), ECF No. 19, at ¶¶ 21-23; *see also* FAC at ¶¶ 2, 52-55. Defendant also does not dispute it has sent telemarketing text messages to, at minimum, thousands of U.S. residents.  FAC ¶ 62.  Defendant's main contention seems to be that Plaintiff has a Pennsylvania area code (and not a Delaware area code).  *See* Mot. at 12.  But, of course, Pennsylvania is just as much in the relevant forum as Delaware—*i.e.*, the United States.

Defendant's CEO, Mr. Mant, states Defendant used two separate U.S.-based entities,

PostScript.iO and Klaviyo (both of which are incorporated in Delaware) to "send SMS text messages."  4/23/2025 Mant Decl., at ¶ 11; Krivoshey Decl ¶¶ 9-10.  In its motion, Defendant states that from 2021 until July 2024 it used PostScript iO "for automating and sending SMS text messages to individuals in the United States."  Mot. at 4.  Then in July 2024, "Bon Charge changed its provider for SMS text messaging from PostScript.io to Klaviyo, a Boston, Massachusetts headquartered company, for SMS text messaging in the United States."  *Id*. at 5.

As can be readily seen from the text messages themselves, the texts are not generic, or "global" texts, but are rather directed specifically at U.S. customers, including text messages for Labor Day, 4th of July, and Thanksgiving/Black Friday sales.  FAC ¶ 21; 4/23/2025 Mant Decl. Ex. A.  What's more, Defendant directs telemarketing text messages to U.S. consumers promoting the HSA and FSA eligibility of its products.  FAC ¶ 22; 4/23/2025 Mant Decl. Ex. A at ECF page 19 ("Hi! Our products are now HAS/FSA eligible!").  Defendant's text messages even provide instructions for how US consumers can "get reimbursed from [their] pre-tax HSA/FSA and enjoy spending pre-tax money" on Defendant's products, and always include a link to its website so text message recipients can immediately shop.  *See id*.

As discussed above, these contacts alone satisfy the first minimal contacts due process factor.  But, these contacts are just the tip of the iceberg.  Below is a nonexclusive list of pervasive, continuous contacts with the Untied States showing that Defendant purposefully directed its activities at residents of the U.S., and has minimum contacts with the U.S.  None of these activities or contacts are disputed.

- Defendant has registered its products with the FDA.  FAC ¶ 18; Krivoshey Decl. ¶ 6.  Defendant's website FAQs tries to lure U.S. consumers by advertising that "[a]ll our Red Light Therapy Devices are registered with the FDA" and "[o]ur Blue Light Blocking Glasses also hold FDA registration."  Krivoshey Decl. ¶ 7.  Defendant does not dispute this.

- Defendant's CEO and his wife, the two cofounders, have secured various trademarks in the U.S. for "Bon Charge." FAC ¶ 19; Krivoshey Decl. ¶ 8. Defendant does not dispute this.

- Defendant's website has an entire landing page dedicated to helping U.S. consumers "save with [their] HAS/FSA funds . . . in partnership with Truemed." FAC ¶ 23. Defendant advertises it has "teamed up with Truemed to make [] wellness products eligible for Health Savings Account (HSA) or Flexible Spending Account (FSA) funds." *Id.* On the same page, Defendant states, "Unfortunately, Truemed is currently only available in the United States." *Id.* This is because HSAs and FSAs are specific to the U.S. and its tax laws. Defendant does not dispute this.

- Defendant contracts with Truemed to provide U.S. consumers with letters of medical necessity from individual licensed practitioners to facilitate U.S. consumers' ability to use their HAS/FSA funds on Defendant's wellness products. FAC ¶ 24. Truemed – formally True Medicine, Inc. – is an active Delaware corporation. *Id.*; Krivoshey Decl. ¶ 5. Defendant does not dispute this. Defendant qualifies that Trumed is headquartered in Austin, Texas, despite being incorporated in Delaware, which, of course, is still within the U.S. Mot. at 7.

- Defendant contracts with a Delaware corporation to fulfill **all** of its U.S. orders, including to customers ordering products from Delaware. FAC ¶ 28; Krivoshey Decl. ¶¶ 11-12. Defendant's "Terms of Supply of Products" on its website state that orders placed through Defendant's website are fulfilled by With Reach (USA), LLC. Krivoshey Decl. ¶ 11. With Reach (USA) LLC is an active Delaware limited liability company. *Id.* Defendant does not dispute this.

- Defendant also contracts with U.S. based influencers to market its products to U.S. consumers on social media and other channels, some of whom are Delaware entities. FAC ¶ 30; Krivoshey Decl. ¶¶ 13-14. Specifically, U.S. based affiliates "earn 15% commission" through promoting Defendant's products to their followers, and receive "ongoing support and coaching from [Defendant's] affiliate team to help [] make the most out of [their] new partnership." Krivoshey Decl. ¶¶ 13. Defendant does not dispute this. Defendant only notes that it purportedly does not have Delaware based "Ambassadors," but effectively concedes that it has such Ambassadors throughout the U.S.. *See* Mot. at 6.

- As stated in its motion, Defendant has also "collaborated with other … U.S. based wellness companies, like Erewhon and Truemed, to increase Bon Charge's visibility as a wellness brand." Mot. at 6-7. According to Defendant, Erewhon is "headquartered and operating solely in California," which of course is in the U.S.. *Id.* at 7. "Erewhon's social media accounts have referenced Bon Charge products in social media posts." *Id.* And, as displayed in Exhibit B to Defendant's motion, Defendant's social media accounts promote Erewhon. Erewhon is a Delaware LLC. FAC ¶ 31; Krivoshey Decl. ¶ 14.

8

- Defendant "sells, and ships its products … to the United States." FAC ¶ 9. Defendant does not dispute this.

- Defendant's social media strategy intentionally displays the lavish and extravagant jet-setting lifestyle of its founders Mr. and Mrs. Mant. FAC ¶ 14. Mr. and Mrs. Mant's Instagram accounts, and the official Instagram account of Bon Charge, emphasizes Mr. and Mrs. Mant jet-setting across time zones around the planet to luxury destinations, with frequent trips to the U.S. to promote Defendant's business (*e.g.*, Santa Monica, California, Miami, Florida, and Washington, DC, for example). *Id.* Defendant does not meaningfully dispute this. Mr. Mant's declaration merely notes that "[m]y wife and I have travelled to the United States before as tourists to celebrate our wedding anniversary, where we primarily visited Los Angeles, California and Miami, Florida." 4/23/2025 Mant Decl.

The record here is clear and undisputed. Defendant purposely sent thousands of telemarketing text messages to thousands of U.S. residents, through U.S. entities, over the course of many years. The messages marketed Defendant's products, which Defendant sells in the U.S.. The messages were curated for a U.S. audience, with content regarding U.S. national holidays, and programs like HSA/FSA that are only available to U.S. residents. Defendant has invested heavily in protecting its U.S. market, such as through securing U.S. trademarks and registering its products with the FDA. Defendant has entered contracts with many, likely dozens, of U.S. social media influencers to market its products in the U.S. And, Defendant has contracted with U.S. entities, like Erewhon, to directly appeal to U.S. residents. As such, Defendant has clearly availed itself in this forum. *See, e.g., Lungaas*, 992 F.3d at 422 ("[Defendant], in short, made a deliberate decision to target and exploit American markets, thus showing purposeful availment."); *Boston Scientific Corp.*, 2020 WL 229993, at *6 (finding factor satisfied where there was evidence that the defendant manufactures products "for sale in the United States"); *Enzo Life Scis., Inc. v. Hologic Inc.*, 2018 WL 4660355, at *3 n.6, *6 (D. Del. Sept. 26, 2018) (finding minimum contacts established for prong three of the Rule 4(k)(2) analysis, where a foreign defendant advertised that it was "marketing the [accused products] worldwide" and that

it was "continu[ing] to make strides in the U.S. market, which is both relevant and very much a consolidated market") (emphasis omitted).

Further, Defendant has purposefully availed itself of the United States because the conduct at issue, a violation of the TCPA, is a tort. *See, e.g. Doohan v. CTB Investors, LLC*, 427 F. Supp. 3d 1034, 1045-46 (W.D. Mo. 2019); *Doyle v. Matrix Warranty Solutions,* Inc., 679 F. Supp. 3d 42, 45 (D.N.J. June 26, 2023); *Mey v. Venture Data, LLC*, 245 F. Supp. 3d 771, 777 (N.D.W.V. Mar. 29, 2017); *Cross v. State Farm Mutual Auto Ins. Co*., 2022 WL 193016, at *6 (W.D. Ark. Jan. 20, 2022). "When the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment." *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir.1999).[1]

Defendant's most "persuasive" case that it cites, which it contends has "facts [that] are nearly identical to those at issue here" is *Komaiko v. Baker Techs., Inc*., 2020 WL 1915884 (N.D. Cal. Apr. 20, 2020).[2] Mot. at 13. In *Komaiko*, one plaintiff visited two Colorado dispensaries and provided his Illinois number, while the other plaintiff visited a dispensary in Washington and provided her Kansas number. *Komaiko*, 2020 WL 1915884 at *7. The plaintiffs, despite having Illinois and Kansas area codes, were California residents and thus asserted that jurisdiction exists on the basis that they were physically in California when they received the texts. *See id*. But this case is wholly inapposite here, where the "forum" is the entire United States.

---

[1] Defendant has also purposefully availed itself through the conduct of its United States agents. FAC ¶¶ 17-32. Given the pervasiveness of Defendant's direct contacts with the forum, however, it is not necessary for the Court to reach this issue.

[2] The court in *Komaiko* explicitly relied on the reasoning of *Abedi v. New Age Med. Clinic PA*, 2018 WL 3155618 (E.D. Cal. June 25, 2018), another case cited by Defendant. *Komaiko*, 2020 WL 1915884 at *6-7. Mot. at 13. Because the legal analysis is effectively identical in the two cases, Plaintiff focuses on *Komaiko* as Defendant posits that decision is its best case.

This is not a case where the defendant had "mere knowledge of the statistical probability that its activities will have some impact in [the forum]." *Id.* Defendant knew and intentionally directed telemarketing text messages to U.S. residents, the content of the messages made it clear that they were intended for U.S. residents because they contained promotions exclusively available to U.S. residents. Defendant's contacts with the U.S. are also pervasive and continuous, as it sells products to U.S. residents, has hired U.S. companies to run its telemarketing campaigns, fulfill U.S. orders, and promote its products on social media. And, Defendant has registered its products with the FDA and trademarked its Bon Charge name. Indeed, directly below the paragraphs cited by the Defendant, the court in *Komaiko* found that the plaintiffs established purposeful availment as to a defendant that solicited business within California. *Id.*

### 2. The TCPA Claims Arise Out Of And Relate To Defendant's Activities With The United States

The second Rule 4(k)(2) factor looks at whether the claim arises out of or relates to the defendant's activities with the United States. *Boston Scientific*, 2020 WL 29993, at *6. The standard for meeting that requirement is "lenient." *See Lyngaas*, 992 F.3d at 423. "If a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts." *Id.*

Here, as in the plethora of TCPA cases discussed above, Defendant's contacts with the forum, the United States, "relate to" the TCPA action. Defendant readily concedes that it used two SMS marketing platform providers, PostScript.iO and Klaviyo, both of which are U.S. companies, to send thousands of text messages to U.S. customers promoting its products. *See* FAC ¶¶ 26-27; 4/23/2025 Mant Decl., at ¶¶ 10-11 ("One key service Bon Charge contracts for (*sic*) an SMS marketing platform. An SMS (text) marketing platform allows on-line retailers to

communicate with customers and potential customers through text messaging to help drive interest in products, sales, and revenue.  Bon Charge has used two SMS marketing platform providers, Postscript iO and Klaviyo."); 4/23/2025 Mant Decl., at ¶ 22 ("There are approximately 118 messages sent to Ms. King's mobile number from February 2021 until July 2024 when Bon Charge switched SMS providers."); 4/23/2025 Mant Decl., at  ¶ 23 ("Bon Charge, through Postscript iO sent a text message to all subscribers, including Ms. King, in June 2022 announcing its rebrand from BluBlox to Bon Charge.").[3]

As discussed above, the text messages at issue here were part of a widespread marketing strategy to sell products to U.S. consumers.  The text messages were purposefully crafted to appeal to a U.S. audience, referencing U.S. national holidays and promoting benefits (through Truemed) that were only available to U.S. residents.  Defendant has hired a plethora of U.S. "ambassadors" to market its products within the U.S..  Defendant also hired a Delaware company, With Reach (USA), LLC, to fulfill all of its U.S. orders.  And, it has contracted with local U.S. companies like Erewhon to promote its products specifically to U.S. residents. Defendant's cofounders also routinely travel to the U.S. as part of a social media marketing strategy to sell products here.  The "nexus" or "relate to" factor is easily satisfied here.  *See Lyngaas*, 992 F.3d at 423; *Educare Centre Servs., Inc*., 414 F. Supp. 3d at 971 (holding nexus exists where the defendant "designed and implemented a telemarketing scheme that purposefully targeted the United States"); *Ott*, 65 F. Supp. 3d at 1058 ("Plaintiffs allege that the individual defendants designed, implemented, and ratified telemarketing practices that MIC directed at Oregon residents …Thus, this second prong for specific jurisdiction is met.").

---

[3] It does not matter for purposes of jurisdiction whether Defendant is the "sender" of the text messages.  *Lyngaas*, 992 F.3d at 423; *Educare Centre Servs., Inc*., 414 F. Supp. 3d at 971; *Ott*, 65 F. Supp. 3d at 1057.

### 3.    Assertion of Personal Jurisdiction Is Reasonable And Fair

The third and final jurisdiction factor, whether exercise of jurisdiction would be reasonable and fair, is presumed to be satisfied here because the first two factors are easily met. *See Lyngaas*, 992 F.3d at 423 ("[a]n inference arises that the third factor is satisfied" when the first two factors are met); *Wien Air Alaska, Inc.*, 195 F.3d at 215 ("It is rare to say the assertion is unfair after minimum contacts have been shown.").  Thus, it is Defendant's "burden" to "show a compelling case that the presence of some other considerations would render jurisdiction unreasonable."  *Boston Scientific*, 2020 WL 229993, at *7 n. 5.

"Courts consider five due process factors in making [the] determination [of whether exercise of jurisdiction would be reasonable and fair]: (1) the burden on the defendant; (2) the forum's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the states in furthering fundamental substantive social policies."  *Id*.

Defendant puts too much weight on its "burden" in defending itself in the U.S., and Delaware specifically.  Defendant's sole evidence as to burden is two self-serving paragraphs from its CEO stating that defending "this case will be a significant financial, emotional, and time-consuming burden on me, my wife, and our company," and purportedly that defending the case would "take a tremendous physical toll traveling through significant time-zone changes" between Australia and Delaware.  *See* 4/23/2025 Mant Decl., at ¶¶ 27-28.  Mr. Mant states that "[g]iven the possibility that a class action lawsuit with potential multi-million dollar damages claims could force my business to close, I have already lost sleep, incurred significant legal costs, and attended conferences and mediations during normal 'sleeping hours' hours in Perth."

*Id.* ¶ 28.  Defendant also tries to paint itself as a small "husband-and-wife" business that would be unfairly burden by a defense of this case in the U.S.  Mot. at 2.

As an initial matter, other than travel and potential time differences, none of these issues are unique to a foreign defendant, as opposed to a U.S. entity.  Every company involved in a lawsuit faces financial burdens.  The amount of damages in the case stems from the steep number of TCPA violations, and not any unfairness of being a foreign, as opposed to domestic, defendant.  The fact that this is a class action is not unique to the U.S., as class actions are a well-known feature of the Australian legal system.[4]

In 2025, it is truer than ever before that "progress in communications and transportation has made the defense of a lawsuit in a foreign tribunal less burdensome."  *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285, 1299 (Fed. Cir. 2009).  Indeed, the above quote in *Synthes* dates back all the way back to a Supreme Court case from 1958. *Hanson v. Denckla*, 357 U.S. 235, 251 (1958).  Defendant has hired local counsel.  Documents can all be exchanged and served electronically.  Counsel can communicate by video or phone.

Nor is the fact that Defendant *might* have to travel significant here.  *See Synthes*, 563 F.3d at 1299 (holding in a case involving a foreign defendant located in Brazil that the defendant's "representatives have traveled to the United States for, among other things, trade shows, which suggests that, as far as [defendant] is concerned, travel in and of itself is not unduly burdensome"); *Cartu*, 2023 WL 5246360, at *8 ("As to the first factor, requiring a party to travel into a jurisdiction to litigate is not unfair when he has purposefully harmed individuals there.").  Plaintiff's counsel will stipulate that all depositions of Defendant will be via remote

---

[4] *See, e.g.,* https://www.fedcourt.gov.au/law-and-practice/class-actions (Federal Court of Australia website discussing class action procedure in Australian Federal Court).

means, such that it will not have to travel to the U.S.  To the extent that there is another mediation in this case, Plaintiff will stipulate to it being remote as well, just like the first mediation in this case.  Defendant's two cofounders, including its CEO Andy Mant, routinely travel to the U.S. for business, flaunt their international travel to promote Defendant's business, routinely fly first-class, dine at the most high-end restaurants, and stay at some of the most expensive hotels in the world when they travel.  FAC ¶¶ 13-16.  None of this is disputed.  Long travel, in and of itself, is not unduly burdensome.

Further, Defendant states it has sold over 330,000 products to over 180,000 customers in 135 countries, for gross retail sales likely in the hundreds of millions of dollars.  *Id*. ¶ 10.  Defendant operates multiple offices, including a new luxurious office in a Sydney high rise that is purportedly "better than some spas."  *Id*. ¶ 11.  None of this is disputed either.  This is no "mom and pop" operation.  Defendant's burden is minimal.

"Moreover, as to due process factors two and three, any such burden would seem to be outweighed by Plaintiff's interest in obtaining effective and convenient relief, as well as by the United States 'substantial interest' in enforcing federal [TCPA] laws."  *See Boston Scientific Corp*., 2020 WL 229993, at *8; *Synthes*, 563 F.3d at 1299 ("Moreover, we think that any burden on GMReis is sufficiently outweighed by the interest of the United States in adjudicating the dispute and the interest of Synthes in obtaining effective and convenient relief, the second and third due process factors.").  In *Lyngaas*, a TCPA action against a foreign defendant, the Sixth Circuit first recognized that "the burden on [the defendant] is high because it had no prior contact with the U.S. federal-court system."  992 F.3d at 423.  But the Sixth Circuit found that jurisdiction was appropriate because "that burden is nonetheless outweighed by other factors," such as "the United State['s] … interest in enforcing federal laws," and the plaintiff's interest in

15

that case about adding a party to the suit that had resources to satisfy a judgment.  *Id*.  *See also Synthes*, 563 F.3d at 1299 ("The United States also has an interest in discouraging injuries that occur within its boundaries").  Each of those factors equally supports jurisdiction here, especially given that Plaintiff's and class members' damages are significant, likely in the millions of dollars.  *See Synthes*, 563 F.3d at 1299 (finding that the plaintiff and the U.S. had a sufficiently high interest as to factors two and three in a dispute that may have been valued as low as $105).

The fourth and fifth factors - (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the states in furthering fundamental substantive social policies – do not neatly apply to a Rule 4(k)(2) analysis, as they are geared at jurisdictional challenges as between two states.  However, "[t]o the extent that the fourth and fifth due process factors apply when the United States is the forum, … they favor jurisdiction in this case."  *See id*., 563 F.3d at 1299; *Boston Scientific Corp*., 2020 WL 229993, at *8 ("And with regard to factors four and five, Defendants have not elucidated why, if Micro-Tech Nanjing were required to face suit here, this would cause a potential 'clash of substantive social policies between competing for a' or lead to an inefficient resolution to this controversy.").

"As far as the fourth factor is concerned, here the forum is the United States, so no other U.S. forum is available to [Plaintiff] for its [TCPA] claim."  *See Synthes*, 563 F.3d at. at 1300.  "Put another way, there is no U.S. forum with which to compare the efficiency of a resolution or with respect to which there is a clash of social policies."  *Id*.  "If we look to the procedural and substantive interests of other nations, we have no reason to believe that the Federal Government's interest in its foreign relations policies with [Australia] will be hindered by allowing the [D]istrict [C]ourt to exercise personal jurisdiction over [Defendant]."  *See id*.

And, as far as the fifth factor is concerned, Defendant has not identified any social policy

of the U.S., or Australia, that would be jeopardized by Defendant being subject to jurisdiction here.  Jurisdiction is proper here because Defendant intentionally targeted U.S. customers with telemarketing texts, sells products in the Untied States, markets its products in the U.S., and committed a tort causing injury to U.S. residents.  Indeed, if anything, the U.S. federal policy, as set out in the TCPA, would be impacted if foreign companies could continue spamming thousands of U.S. residents without prior express consent, resulting in millions of statutory TCPA damages, without being subject to suit in the United States.

## IV.    DENFENDANT'S RULE 12(b)(6) ARGUMENTS ARE WITHOUT MERIT

Defendant makes a factual attack at the pleading stage to argue that Plaintiff's TCPA claims must be dismissed because she purportedly provided prior express consent.  *See* Mot. at 18-20.  First, as to the "Quiet Hours" provision of the TCPA,[5] which bars companies from "initiat[ing] any telephone solicitation to: Any residential telephone subscriber before the hours of 8 a.m. or after 9 p.m. (local time at the called party's location)," Defendant states that this theory is "novel" and that "there is no case law to guide how this section of the TCPA should apply to text messages."[6]  *See* Mot. at 20.  Of course, Defendant does not, nor can it, contend that it did not in fact violate this provision, as Plaintiff alleges that Defendant sent at least 23 telemarketing text messages to Plaintiff outside permitted hours.  FAC ¶ 3.  Nor is it correct that there is "no case law" as to a Quiet Hours violation.  *See, e.g., Jubb v. CHW Grp., Inc*., 2025 WL 942961, at *1, 7 (D.N.J. Mar. 28, 2025) (denying motion to dismiss complaint based on Quiet Hours TCPA violation).

---

[5] *See* FAC ¶¶ 3, 83-89 (alleging Quiet Hours violations); 47 C.F.R. § 64.1200(c)(1).

[6] Defendant stipulated earlier in the motion that "Ms. King and Bon Charge agree that SMS text messages are considered the equivalent of telephone calls under the TCPA."  Mot. at 13 n. 12 So it is not clear why the fact that these are "text messages" matters.

Defendant's only substantive issue with Plaintiff's TCPA claims is prior express consent. Consent is an affirmative defense in a § 64.1200(c)(2) action on which a defendant bears the burden of proof. *See, e.g., Smith v. Pro Custom Solar LLC*, 2021 WL 141336, at *4 (D.N.J. Jan. 15, 2021). Submission of evidence outside the pleadings is, however, is not proper at this stage.

Defendant has not submitted evidence of prior express *written* consent. Under 47 C.F.R. § 64.1200(c)(2)(i), a defendant can be exempt from liability if "'[i]t has obtained the subscriber's prior express invitation or permission,' which 'must be evidenced by a signed, written agreement between the consumer and seller which states that the consumer agrees to be contacted by this seller and includes the telephone number to which the calls may be placed." *Williams v. Pisa Grp., Inc*., 2023 WL 2227697, at *2 (quoting 47 C.F.R. § 64.1200(c)(2)(ii). Defendant completely ignores the requirement that consent be "written" for this portion of the TCPA, and instead relies on cases concerning other provisions of the TCPA, where consent can be implied or does not have to be written. *See* Mot. at 19 (citing *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1046 (9th Cir. 2017) and *Blow v. Bijora, Inc.*, 855 F.3d 793, 804 (7th Cir. 2017)); *see also Sielman v. Freedom Mrtg. Corp*., 2018 WL 3656159, at *8 (distinguishing *Van Patten* and holding that, for telemarketing calls, prior express written consent is required). Indeed, in *Van Patten* the Ninth Circuit ruled that prior express written consent was mandatory for telemarketing calls occurring after 2012. *Van Patten*, 847 F.3d 1037, 1045. Both *Van Patten* and *Blow* concerned the TCPA's autodialer provisions, inapplicable here, which do not require prior consent be in writing, other than for telemarketing calls. *Blow*, 855 F.3d at 803. And, both of those cases were decided on summary judgment, where evidence of consent was fleshed out.

Defendant's only case dealing with prior express written consent does not help either. *See* Mot. at 18-19 (discussing *Winner v. Kohl's Department Stores, Inc*., 2017 WL 3535038

(E.D. Pa. Aug. 17, 2017)).  In *Winner*, the Court expressly found that Plaintiff provided express *written* consent.  *Winner*, 2017 WL 3535038 at *5-8 (discussing prior express written consent). In relevant part, the written agreement "shall include a clear and conspicuous disclosure informing the person signing that: (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and (B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services."  *Id*, at *5 (citing 47 C.F.R. § 64.1200(f)(8)).  Further, "the determination of whether proper consent is given to receive advertising text messages requires that (1) the consent was obtained following a clear and conspicuous disclosure of the consequences of providing consent; and (2) the consent was obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service."  *Id*.

The only reason the Court in *Winner* reached the highly factual question of prior express written consent is because the parties in that case executed a 21 paragraph "Stipulation of Facts" as to all issues concerning consent.  *Id*. at *2.  No such stipulation exists here, and consent is highly disputed.  Further, the Stipulation of Fact provided the disclosures the plaintiff saw *prior to* sending a text message to the defendant, and showed that upon receiving plaintiff's text message, defendant sent "call to action" texts about further opting in and expressly disclosed what appeared to be compliant TCPA disclosure language.  *See id*. *6-7.  The "written agreement" was a text message plaintiff received *after* she texted "APP," which included "clear and conspicuous disclosure informing her that, by sending the authorizing 'SAVE30' text she was authorizing Kohl's to deliver to her five to seven telemarketing texts each month by an

automatic telephone dialing system.  It also incorporated by reference the terms and conditions of the program." *Id.* at *7 (internal citations omitted).  The court held that the agreement was only "signed" by virtue of the plaintiff texting a *second* time, *after* being presented with the terms and conditions and having a full TCPA disclosure sent to her.  *Id.*  This was, in other words, a double-opt in procedure, where 1) customers were first shown an ad with some relevant terms in small print and invited to text a key word; 2) customers would then text the word "APP"; 3) customers would then be sent a TCPA disclosure and consent language and invited to text "SAVE30" to agree to those terms, and 4) *only then* customers would "sign" via texting "SAVE30," thereby agreeing to those terms.  *Id.*  Nothing like that happened here.  Defendant has not put in evidence of what, if anything, was shown to Plaintiff before she purportedly texted Defendant.  And, Defendant readily admits that Plaintiff never responded to a single text message, never bought anything from Defendant's website, and is not a customer.  *See* 4/23/2025 Mant Decl., at ¶ 24 ("Ms. King did not make nay purchases from Bon Charge … I can also confirm Bon Charge did not ship any products to Ms. King's Delaware address.").; *id.*, Ex. A (call log showing that there was only one purported incoming text from Ms. King's phone number); *see also* May 8, 2025 Declaration of Phyllis King at ¶¶ 8-9. There is no prior express written consent here as a matter of law.

## V.    CONCLUSION

Defendant's motion to dismiss should be denied in full.  To the extent that the Court believes Plaintiff has not met her burden to establish jurisdiction, Plaintiff asks for leave to take discovery concerning Defendant's contacts with the forum, or to proceed to an evidentiary hearing.  If the Court believes that Plaintiff has not stated a claim, Plaintiff seeks leave to amend.

Dated: May 8, 2025                          Respectfully  submitted,

                                            */s/ R. Grant Dick IV*
                                            R. Grant Dick IV
                                            COOCH AND TAYLOR P.A.
                                            1000 N. West Street, Suite 1500
                                            Wilmington, DE 19801
                                            Telephone: 302-984-3800
                                            E-Mail: gdick@coochtaylor.com

                                            Yeremey O. Krivoshey (SBN 295032)
                                            SMITH KRIVOSHEY, PC
                                            (*pro hac vice*)
                                            166 Geary Str STE 1500-1507
                                            San Francisco, CA 94108
                                            Telephone: 415-839-7077
                                            Facsimile: (888) 410-0415
                                            E-Mail: yeremey@skclassactions.com

                                            Aleksandr "Sasha" Litvinov (SBN 95598)
                                            SMITH KRIVOSHEY, PC
                                            (*pro hac vice*)
                                            867 Boylston Street 5th Floor #1520
                                            Boston, MA 02116
                                            Telephone: 617-377-7404
                                            Facsimile: (888) 410-0415
                                            E-Mail: sasha@skclassactions.com

                                            *Attorneys for Plaintiff*
                                            *and the Proposed Class*