# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PHYLLIS KING, on behalf of herself and others similarly situated,, <br><br> Plaintiff, <br><br> -against- <br><br> BON CHARGE, an Australian company, <br><br> Defendant. | Civil Action No. 1:25-cv-00105-RGA |

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF
MOTION TO DISMISS AMENDED COMPLAINT**

Alessandra Glorioso (DE Bar No. 5757)
DORSEY & WHITNEY LLP
300 Delaware Avenue, Suite 1010
Wilmington, Delaware 19801
Telephone: (302) 425-7171
Fax: (302) 425-7177
Email: glorioso.alessandra@dorsey.com

Theresa M. Bevilacqua (Admitted *Pro Hac Vice*)
Ashley Repp (Admitted *Pro Hac Vice*)
DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
Telephone: (612) 340-2600
Email: bevilacqua.theresa@dorsey.com
        repp.ashley@dorsey.com

*Attorneys for Defendant Bon Charge*

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

ARGUMENT ........................................................................................................................2

    I.    PERSONAL JURISDICTION UNDER FEDERAL RULE OF CIVIL PROCEDURE 4(K)(2) WOULD VIOLATE DUE PROCESS..............................2

        A.    Defending this case in the United States would be tremendously burdensome on Bon Charge.........................................................................4

        B.    Neither Delaware, nor the United States, have an interest in adjudicating Ms. King's dispute with Bon Charge..........................................................5

        C.    Ms. King does not need convenient or effective relief from the United States' courts. ..................................................................................................6

        D.    The interstate judicial system's interest in efficient resolution of controversies favors Bon Charge. ...............................................................7

        E.    The Court's involvement will not advance social policy.............................8

    II.    THE COURT SHOULD DISMISS PLAINTIFF'S CLAIMS UNDER RULE 12(B)(6)............................................................................................................8

    III.    JURISDICTIONAL DISCOVERY WOULD NOT BE APPROPRIATE. .............9

CONCLUSION...................................................................................................................11

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bos. Sci. Corp. v. Micro-Tech Endoscopy USA, Inc.*,
  Civil Action No. 18-1869-CFC-CJB, 2020 U.S. Dist. LEXIS 7330 (D. Del.
  Jan. 15, 2020) ................................................................................................... 2, 3

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985) ........................................................................................ 4, 5, 8

*Jubb v. CHW Grp., Inc.*,
  2025 WL 942961 (D.N.J. Mar. 28, 2025) ............................................................... 9

*King v. Homeowner Solution Pros Inc.*,
  1:25-cv-00256-RGA (D. Del. Mar. 6, 2025) ........................................................... 6

*King v. Whaleco Inc.*,
  1:24cv11720-JEK (D. Mass. Jul. 8, 2024) .............................................................. 6

*Lyngaas v. Curaden AG*,
  992 F.3d 412 (6th Cir. 2021) ............................................................................... 2, 3

*Toys "R" Us, Inc. v. Step Two, S.A.*,
  318 F.3d 446 (3d Cir. 2003) ................................................................................. 10

*Zausner Foods Corp. v. ECB USA, Inc.*,
  Civil Action No. 19-731-RGA, 2022 U.S. Dist. LEXIS 54063 (D. Del. Mar.
  25, 2022) ................................................................................................................ 9

**Other Authorities**

Federal Rule of Civil Procedure 4(k)(2) ................................................................ *passim*

Rule 12(b)(2) ................................................................................................................ 2

Rule 12(b)(6) ................................................................................................................ 8

## INTRODUCTION

Bon Charge is simply not subject to personal jurisdiction in this Federal District. Ms. King concedes as much in her opposition. Instead of amending her complaint to deal with the lack of personal jurisdiction or otherwise providing evidence to support a proper exercise of personal jurisdiction over a foreign defendant, Ms. King incorrectly relies on Federal Rule of Civil Procedure 4(k)(2). At the heart of Ms. King's argument is the unfounded notion that Rule 4(k)(2) should act as a fail-safe to grant jurisdiction over anyone not otherwise subject to the jurisdiction of a specific state. She argues that because Delaware does not have jurisdiction over Bon Charge, the United States should nevertheless exercise personal jurisdiction over Bon Charge in Delaware, notwithstanding the fact that such an exercise would violate due process.

Based on her Response to Bon Charge's Motion to Dismiss, Ms. King believes the United States may exercise personal jurisdiction over anyone who has vacationed in the United States, is accustomed to air travel, is subjectively perceived to have financial resources, has sold products to an individual located in the United States, or has engaged with another company that happens to be incorporated in Delaware should be subject to the jurisdiction of the United States. *See* D.I. 23 at 1. Such an application Rule 4(k)(2) would allow the United States to exercise personal jurisdiction over possibly billions of foreign individuals and businesses, especially because more than 2 million corporate entities, including 67.6 percent of Fortune 500 companies, are incorporated in Delaware due to its corporation-friendly laws, courts, and legal services.[1] Rule 4(k)(2) was not designed to create this type of far-reaching, catch-all personal jurisdiction, and here, such an exercise would violate the core principles of due process.

---

[1] Delaware Division of Corporations, *Annual Report Statistics*, https://corp.delaware.gov/stats/ (last accessed May 13, 2025).

1

**ARGUMENT**

**I.      PERSONAL JURISDICTION UNDER FEDERAL RULE OF CIVIL PROCEDURE 4(K)(2) WOULD VIOLATE DUE PROCESS.**

Here, Bon Charge concedes that the TCPA is a federal law, and therefore, Ms. King's claims arise under federal law. Bon Charge also acknowledges that, as a small, privately held Australian company without any presence in the United States, that does not manufacture or warehouse product in the United States, or maintain a subsidiary or agent in the United States, it may be difficult to identify where in the United States Bon Charge could be subject to any state's courts of general jurisdiction.  However, Ms. King's meritless federal claim and difficulty in finding a proper court are not sufficient bases for saddling a small, family-run Australian company with a putative U.S. class action literally half-way around the world. Indeed, application of personal jurisdiction consistent with Ms. King's distorted understanding of Rule 4(k)(2) would violate due process. Ms. King misunderstands that Delaware's lack of personal jurisdiction over Bon Charge does not create a default basis for the United States to exercise personal jurisdiction over Bon Charge in this federal District Court.

Throughout her Response Brief, Ms. King relies primarily on two cases to support her personal jurisdiction argument: *Boston Scientific Corp.* and *Lyngaas*. *See* D.I. 23 at 2-5, 6, 9, 11-13, 15-16. Both are inapposite for similar reasons, namely that the defendants moving to dismiss for lack of personal jurisdiction in both cases had wholly-owned subsidiary companies incorporated in the United States both of which were leveraged to market and launch products in the United States' market.

The *Boston Scientific Corp.* case is fundamentally distinct from, and unhelpful to, Ms. King's case. In *Boston Scientific Corp.* defendant Micro-Tech Nanjing moved to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), arguing that it was a Chinese company, with

its principal place of business in China, and that it did not manufacture or import its products in the United States. *See Bos. Sci. Corp. v. Micro-Tech Endoscopy USA, Inc.,* Civil Action No. 18-1869-CFC-CJB, 2020 U.S. Dist. LEXIS 7330, at *3 (D. Del. Jan. 15, 2020). However, Micro-Tech Nanjing maintained a wholly-owned subsidiary (which was also named as a defendant) called Micro-Tech USA, a Delaware corporation, which Micro-Tech Nanjing used to intentionally target the United States, import its goods, and launch and sell its products in the United States' market. *Id*. at 19. By establishing these extensive and intentional contacts between Micro-Tech Nanjing and the United States, the court found the plaintiff made a *prima facie* showing that personal jurisdiction existed.

*Lyngaas* is similarly unhelpful for Ms. King. To begin, *Lyngaas* is a 6th Circuit case addressed a Rule 4(k)(2) analysis, and is not binding on this court. *See Lyngaas v. Curaden AG,* 992 F.3d 412 (6th Cir. 2021). In *Lyngaas*, the court found it could exercise personal jurisdiction over a foreign defendant that also had a United States subsidiary, and that it had availed itself of the U.S. market by launching its U.S. subsidiary and leveraging that subsidiary to promote its products in the United States. *See Lyngaas* 992 F.3d 412 at 422. Even though the defendant owned a United States subsidiary company used to promote its products in the United States market, the court *still* goes on to note that where a case involves a "non-resident alien defendant," the court must give "special weight to the 'unique burdens placed upon one who must defend oneself in a foreign legal system," and recognized that the despite having a United States subsidiary company, the burden on the defendant was nevertheless high. *Id*. at 423.

With the stark differences in Ms. King's primary cases detailed, Bon Charge addresses why neither Delaware nor the United States may exercise personal jurisdiction over Bon Charge. Pursuant to Rule 4(k)(2), serving a summons or filing a waiver of service establishes personal

3

jurisdiction over a defendant if: (A) the claim arises under federal law; (B) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (C) exercising jurisdiction is consistent with the constitution. Fed. R. Civ. P. 4(k)(2). In conducting a due process analysis under Rule 4(k)(2), the court must assess the five *Burger King* factors: 1) the burden on the defendant; 2) the forum's interest in adjudicating the dispute; 3) the plaintiffs interest in obtaining convenient and effective relief; 4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and 5) the shared interest of the states in furthering substantive social policies. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477 (1985). This due process analysis does not weigh in Ms. King's favor, and instead makes clear that an exercise of personal jurisdiction by this Court would be inconsistent with due process under the Constitution.

### A. Defending this case in the United States would be tremendously burdensome on Bon Charge.

First, it would be an incredible burden on Bon Charge, as a small, privately held, husband-and-wife-owned company, to fly back and forth from Perth, Australia to Delaware. D.I. 19 at ¶ 27. Contrary to Ms. King's argument, Andy and Katie Mant do not routinely travel to the United States to promote Bon Charge products, and Andy Mant detailed his trip to the United States in his Declaration. *See* D.I. 19 at ¶ 26. Perth is generally considered the most isolated metropolis on earth, with the next closest city more than 2000 kilometers (approximately 1,300 miles) away. D.I. 19 at ¶ 2. The journey for Andy and Katie Mant may easily take four or more flights (each way), including at several long-haul flights, thousands of dollars in travel expenses, significant time away from hands-on, daily operations and management of Bon Charge, not to mention the physical toll such travel takes when moving through significant time-zone changes. D.I. 19 at ¶ 27. This high-level analysis does not even contemplate the burden of depositions,

meetings with internationally-based counsel, engaging with a foreign country's legal system, and court appearances for motions, oral arguments, conferences, or trial. Without a doubt, it would be a remarkable burden on Bon Charge to defend this lawsuit in Delaware.

While Ms. King believes Andy and Katie Mant to be subjectively financially stable and accustomed to international flights, her opinion of the couple is not only irrelevant, it is also meritless and unsubstantiated. *See e.g.* D.I. 23 at 15. To establish personal jurisdiction over the named defendant Bon Charge, Ms. King must demonstrate some connection between Bon Charge and Delaware. Plaintiff is not entitled to inject her personal opinion regarding whether she thinks the Mants' personal anniversary trip to the United States means the physical toll of travel is not a burden, or whether conducting mediations, court appearances, counsel calls, or depositions, in the middle of the night Perth time, is burdensome, or whether she thinks Instagram photographs, a platform on which people generally post the rosiest moments of their lives, suggest wealth that entitles the Court to haul Bon Charge to the U.S. to defend this case.

This factor of the personal jurisdiction analysis favors Bon Charge, as Andy Mant has detailed why defending against this lawsuit would be a significant burden on Bon Charge, and as noted in *Lyngaas*, is entitled to deference. *See Lyngaas* at 423.

    **B.**    **Neither Delaware, nor the United States, have an interest in adjudicating Ms. King's dispute with Bon Charge.**

Turning to the second factor of the *Burger King* due process analysis, neither Delaware, nor the United States, have a meaningful interest in adjudicating this dispute between Ms. King and Bon Charge. As thoroughly discussed in Bon Charge's Motion to Dismiss, the only facts tying Delaware to this lawsuit is Ms. King's allegation that she resides in Delaware and has engaged with companies incorporated under the laws of Delaware. D.I. 23 at 11. As for the United States, the only facts Ms. King sets forth actually tying Bon Charge to the United States are relationships

with other wellness companies, some of which are in the United States and a vacation the Mants once took to celebrate their anniversary. *Id.* at 11-12.

Simply put, neither Delaware nor the United States have interest in adjudicating a TCPA case where the thrust of the claim is that a small Australian company sent SMS text messages to a plaintiff with a Pennsylvania phone number after she opted into receiving those SMS text messages in February of 2021, then sat on those messages she opted into for more than three years.[2] This is not a compelling basis for Delaware or the United States to adjudicate this dispute, and this factor weighs in favor of Bon Charge.

### C. Ms. King does not need convenient or effective relief from the United States' courts.

Turning to the third prong of the due process analysis, the Plaintiff is not in need of convenient or effective relief from Delaware courts, or any court in the United States. After receiving a letter from Ms. King's attorneys threatening litigation, Andy Mant, as owner of a small company with ready access to all of Bon Charge's business platforms, immediately and manually unsubscribed Ms. King from all Bon Charge communications, providing her with the convenient and effective relief. *See* D.I. 19 at ¶¶ 9, 25. Ms. King has not received any messages from Bon Charge since Mr. Mant manually unsubscribed her phone number, nor will she ever receive messages from Bon Charge again, as she has been permanently removed from Bon Charge's subscriber list. *Id*.

As for the other alleged, unidentified members of Ms. King's proposed class, Bon Charge uses SMS communications platforms designed for small businesses, and only those individuals that opt-in to receive messages will receive messages. *See* D.I. 19 at ¶¶ 11-12, 14. Bon Charge

---

[2] Ms. King is a TCPA serial litigant, well-versed in staging and capitalizing on alleged TCPA violations. *See King v. Whaleco Inc.*, 1:24cv11720-JEK (D. Mass. Jul. 8, 2024); *see also King v. Homeowner Solution Pros Inc.*, 1:25-cv-00256-RGA (D. Del. Mar. 6, 2025).

6

does not have the capacity or policy to send mass text messages to unwitting recipients, nor does it buy phone number lists or use random dialing. *Id*. These facts demonstrate that it is impossible for there to be a possible class size of the scale Ms. King imagines. *See* D.I. 23 at 16.

Ultimately, this factor favors Bon Charge, as Ms. King is not in need of immediate and effective relief from U.S. courts, and neither are the members of Ms. King's proposed class.

### D. The interstate judicial system's interest in efficient resolution of controversies favors Bon Charge.

Analyzing the fourth factor of the due process analysis, the interstate judicial system's interest in obtaining the most efficient resolution of controversies favors Bon Charge. Because Bon Charge has no meaningful connection to the United States, if Bon Charge is forced to defend this case in Delaware, nothing about this lawsuit will be efficient. Despite Ms. King's argument that most things can take place online, she ignores the 14-hour time difference between Delaware and Perth, Australia. Scheduling anything, even in a remote format, has been and will continue to be a constant struggle with the significant time-zone difference between the parties and the Court, costs will likely be extraordinarily high for all parties, depositions will be difficult to arrange and coordinate, evidence could be on two continents, and at some point, in addition to Delaware and U.S. Federal law, Australian laws may become relevant.[3] Notably, Ms. King has not reviewed whether or not she may have a forum for her claims under Australian law, despite having done enough research to argue that class actions exist in Australia. *See* D.I. 23 at 14.

This factor weighing the interstate judicial system's interest in efficient resolution of controversies favors Bon Charge.

---

[3] It should be noted that, throughout Ms. King's response brief, she misleadingly quotes case law to include bracketed key words like "TCPA," and "Australian," to superficially suggest that the cases she cites speak to the issues and countries involved in this matter.

### E. The Court's involvement will not advance social policy.

Fifth and finally, is the factor of the shared interest of the states in furthering substantive social policies. While the spirit of the TCPA is designed to end harassing telemarketing calls, Ms. King ignores that purpose. Here, Ms. King opted to receive SMS text messages, using her Pennsylvania phone number, from Bon Charge in February 2021. D.I. 19-1. After sitting on those messages for more than three years, Ms. King takes issue with those text messages, then threatens litigation. Now, she demands monetary damages for not just receiving and sitting on these messages after opting in, but for receiving them at certain hours of the day. D.I. 16 ¶¶ 3, 86. As Bon Charge noted in its Motion to Dismiss, there is no settled case law addressing text messages related to a "quiet hours" claim. Ms. King's set of facts certainly does not suggest this Court's involvement will advance the social policy of ending the unwanted telemarketing calls that the TCPA was designed to prevent. This factor does not favor Ms. King either.

In analyzing the *Burger King* factors, it remains abundantly clear that any exercise of personal jurisdiction over Bon Charge would violate the due process afforded by the Constitution. Rule 4(k)(2) was not created to apply the facts of this case. The Court should dismiss this action for lack of personal jurisdiction.

## II. THE COURT SHOULD DISMISS PLAINTIFF'S CLAIMS UNDER RULE 12(B)(6).

As discussed at length in its Motion to Dismiss, Plaintiff's TCPA claims must be dismissed because she opted to receive text messages from Bon Charge more than four years ago, while she was the registered owner of the phone number that subscribed to receive messages. *See* D.I. 25 at ¶ 4. Turning to Ms. King's "quiet hours" claim, that must also be dismissed, not only because she opted to receive text messages from Bon Charge, but also

8

because there is no case law to guide how "quiet hours" should apply to text messages and is therefore not a cognizable claim.

In defense of her claim, Ms. King represents as "case law" a recent "quiet hours" claim that survived dismissal. *Jubb v. CHW Grp., Inc.*, 2025 WL 942961, at *1, 7 (D.N.J. Mar. 28, 2025). There are several issues with Ms. King's misleading citation. First, as this Court is aware, an order denying a motion to dismiss is not the same as settled case law. Second, the gravamen of the defendant's argument for dismissal was that plaintiffs did not demonstrate defendant placed the calls at issue and that the "quiet hours" claim was duplicative of the also alleged "do not call" claim. *See Jubb* at 7, 12. The motion to dismiss was not premised on the viability or application of the TCPA to a "quiet hours" claim predicated on receipt of a text message. *See generally Jubb.* Further, the *Jubb* case "quiet hours" claims included actual phone calls. *Jubb* at 4. While text messages are currently considered phone calls under the TCPA, courts have not yet determined how to address text messages received during "quiet hours," and this is precisely the issue that is currently being litigated in recent surge of TCPA text message cases. And finally, the *Jubb* court did not comment on the merit of the "quiet hours" claim, but instead premised its order on the concept that plaintiffs may allege alternative theories of recovery. *Jubb* at 13.

### III.    JURISDICTIONAL DISCOVERY WOULD NOT BE APPROPRIATE.

Buried in her conclusion, Ms. King requests leave to conduct jurisdictional discovery concerning Bon Charge's contacts with the forum but fails to articulate any reasons why such an opportunity is appropriate in this matter. D.I. 23 at 20. Jurisdictional discovery would not be appropriate here. Specifically, Ms. King has not met the "required threshold showing" "present[ing] factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the party] and the forum state." *See e.g.*, *Zausner Foods Corp. v. ECB USA, Inc.*, Civil Action No. 19-731-RGA, 2022 U.S. Dist. LEXIS 54063 at

9

8 (D. Del. Mar. 25, 2022)(quoting *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003)). Throughout her Response Brief, Ms. King makes vague, unsubstantiated, and incorrect allegations of Bon Charge's perceived ties to the United States, including, *inter alia*, that Bon Charge has "many U.S. 'ambassadors' to market its products within the U.S.," that Andy and Katie Mant are "international jet-setters that have traveled to both coasts of the U.S.," and that the Mants have been to the United States to promote Bon Charge. *See* D.I. 23 at 1. These allegations are a baseless fiction spun by Ms. King's apparent subjective review of social media posts, and certainly not supported by Andy Mant's Declaration. Unlike the defendants in *Toys R Us* or *Zausener Foods*, Andy Mant has provided no such testimony that would support a connection between Bon Charge and the United States on which Ms. King is entitled to conduct discovery. In fact, any such discovery would be nothing more than a fishing expedition.

Even if she had specifically requested jurisdictional discovery on these unsubstantiated allegations, Ms. King has not met the required showing presenting factual allegations that suggest with reasonable particularity the existence of requisite contacts between Bon Charge and the U.S. or Delaware. The Court should deny Ms. King's request for jurisdictional discovery.

## CONCLUSION

WHEREFORE, Bon Charge respectfully requests that for the reasons stated herein, this Court GRANT the instant Motion and DISMISS Plaintiff's Amended Complaint with prejudice.

Respectfully submitted this 15th day of May, 2025.

DORSEY & WHITNEY (DELAWARE) LLP

 /s/ Alessandra Glorioso
Alessandra Glorioso (#5757)
300 Delaware Avenue, Suite 101
Wilmington, DE 19801
Telephone: (302) 425-7171
Facsimile: (302) 425-7177
E-mail: glorioso.alessandra@dorsey.com

Theresa M. Bevilacqua (Admitted *Pro Hac Vice*)
Ashley Repp (Admitted *Pro Hac Vice*)
DORSEY & WHITNEY LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
Telephone: (612) 340-2600
Email: bevilacqua.theresa@dorsey.com
          repp.ashley@dorsey.com

*Attorneys for Defendant Bon Charge*

**CERTIFICATE OF SERVICE**

      I hereby certify that on May 15, 2025 I caused the foregoing document to be electronically filed with the Clerk of Court using the CM/ECF System, which will send a notification of such filing to the following:

      R. Grant Dick IV (#5123)
      COOCH AND TAYLOR P.A.
      1000 N. West Street, Suite 1500
      Wilmington, DE 19801
      Telephone: 302-984-3800
      E-Mail: gdick@coochtaylor.com
      *Attorneys for Plaintiff and the Proposed Class*

      **OF COUNSEL**
      Yeremey O. Krivoshey (SBN 295032)
      SMITH KRIVOSHEY, PC
      (*pro hac vice* forthcoming)
      166 Geary Str STE 1500-1507
      San Francisco, CA 94108
      Telephone: 415-839-7077
      Facsimile: (888) 410-0415
      E-Mail: yeremey@skclassactions.com

      Aleksandr "Sasha" Litvinov (SBN 95598)
      SMITH KRIVOSHEY, PC
      (*pro hac vice* forthcoming)
      867 Boylston Street 5th Floor #1520
      Boston, MA 02116
      Telephone: 617-377-7404
      Facsimile: (888) 410-0415
      E-Mail: sasha@skclassactions.com
      *Attorneys for Plaintiff*
      *and the Proposed Class*

      */s/ Alessandra Glorioso*
      Alessandra Glorioso (#5757)